THE PEOPLE ex rel. Edwin O. Raster

v.

JOHN J. HEALY, State's Attorney.

*Opinion filed October 23, 1907—Petition stricken Dec. 5, 1907.*

1. QUO WARRANTO—*under our statute a quo warranto proceeding is a civil remedy.* Under the Illinois statute a proceeding by information in the nature of *quo warranto,* as distinguished from the common law writ of *quo warranto,* is a civil remedy when used for the protection of private rights, and in the event of a judgment in favor of the defendant costs may be awarded against the relator.

2. SAME—*when the State's attorney may be compelled, by mandamus, to sign and present petition for quo warranto.* Where an individual having a private right or grievance distinct from that of the public at large, which is enforceable by a proceeding under the *quo warranto* statute, presents his petition to the State's attorney for signature, the only discretion possessed by such officer is to determine whether the petition is in proper form and the accompanying affidavit shows a *prima facie* case, and if the petition and affidavit are sufficient, such officer may be compelled, by *mandamus,* to sign and present the petition.

3. SAME—*practice of the State's attorney holding hearing is improper.* When a petition for leave to file an information in the nature of *quo warranto* is presented by an individual to the State's attorney, it is the duty of that officer, if the petition is in proper form and the accompanying affidavit of facts is *prima facie* sufficient, to sign and present the petition, with the affidavit, to the court to which the petition is addressed; and it is improper practice for him to cause the relator and respondent to appear before him and have a hearing upon the question of signing the petition.

4. SAME—*in matters of public right, only, the State's attorney or Attorney General may refuse to act.* In matters which are, in fact, prosecutions by the People which involve no individual right or grievance of the relator, the Attorney General or State's attorney has a discretion in determining whether the petition shall be presented to the court, and such discretion cannot be controlled.

5. SAME—*when quo warranto is the proper remedy.* Under the express provisions of section 1 of the Quo Warranto act an information in the nature of *quo warranto* is the proper remedy where any person usurps or unlawfully holds any office in any corporation created by the authority of the State.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

On May 15, 1906, the relator, Edwin O. Raster, filed in the circuit court of Cook county a petition for *mandamus* against John J. Healy, State's attorney of that county, praying for a writ commanding him to sign a petition for leave to file an information in the nature of a *quo warranto* against one Horace L. Brand, charged with having usurped the office of treasurer of the Illinois Publishing Company.

The petition for *mandamus* alleges that on April 2, 1906, relator presented to appellee a petition, with relator's affidavit in support thereof, which petition was addressed to the circuit court of Cook county, and prayed leave to file an information in the nature of a *quo warranto* against Horace L. Brand, and that at appellee's request both relator and the respondent in said petition so presented to appellee appeared before appellee, who gave them a hearing and afterward refused to sign said petition; that appellee made no objection to the sufficiency of the same in law and suggested no other way in which relator could have his rights judicially determined; that on May 10, 1906, relator presented a similar petition and affidavit to William H. Stead, Attorney General for the State of Illinois, and requested him to sign said petition, but he refused, giving as his sole reason therefor that the appellee had refused to sign the first mentioned petition and that he would not act on a similar petition in reference to the same subject contrary to the action of the State's attorney. The petition for *mandamus* sets out in full section 1 of chapter 112, Hurd's Revised Statutes of 1905, and alleges that it was the duty of appellee, under the above statute, to sign the petition presented, and that because of his refusal to do so the People were deprived of their only adequate remedy against the usurpation of office of said respondent, Horace L. Brand, in violation of the laws and constitution of the State of Illinois.

The facts alleged in the petition presented to appellee for his signature, as they appear from the petition in the case at bar, are substantially as follows: That the Illinois Publishing Company is an Illinois corporation; that the treasurer is an officer of said corporation; that on November 23, 1905, the office of treasurer became vacant through resignation; that since such resignation no person has been legally elected to said office, but since that time one Horace L. Brand unlawfully has assumed said office, and that petitioner believes the foregoing allegations can be established by proof.

From the affidavit of relator attached to said petition presented to appellee it appears, as shown by the abstract in this case, that he (relator) is secretary of the Illinois Publishing Company and that he is also a member of its board of directors; that on November 20, 1905, a special meeting was called by the president of said company for November 23, 1905; that at such meeting the resignation of W. R. Michaelis as treasurer of the company was presented and an attempt was made to elect Horace L. Brand to fill the vacancy; that the board of directors consisted of ten members; that there were but five directors present, including Brand, and he received but five votes; that as a result thereof he assumed to have been elected treasurer and since that time has acted as treasurer; that the by-laws of the company require six directors to constitute a quorum, and provide that the election of officers shall occur at the first regular meeting of directors after the annual stockholders' meeting in each year, and that the board of directors shall consist of ten members; that at the annual meeting held for the annual election of officers on January 15, 1906, Horace L. Brand and W. R. Michaelis were both nominated for treasurer, and each having received five votes the presiding officer announced that there was no election.

To the petition for a writ of *mandamus* a general and special demurrer was interposed by appellee, which was sus-

tained by the court and the petition dismissed. From the judgment of the circuit court appellant brings this case to this court by appeal, and urges as grounds for reversal, first, the court erred in construing section 1 of the statute of the State of Illinois entitled "An act to revise the law in relation to *quo warranto*," approved March 23, 1874, in force July 1, 1874, being section 1 of chapter 112, Hurd's Revised Statutes of 1905; second, if the construction given by the court to that section be correct, then the court erred in not holding that section to be unconstitutional.

RICHBERG & RICHBERG, (DONALD R. RICHBERG, of counsel,) for appellant:

The petition for *quo warranto* and the affidavit presented to the State's attorney by the relator made out a *prima facie* case of usurpation of office. *Place* v. *People,* 192 Ill. 160.

The statute regarding *quo warranto* leaves no discretion with the State's attorney in the presentation of a petition, because "may" means "shall" whenever the rights of the public or of third persons depend upon the exercise of the power or the performance of the duty to which it refers. *Kane* v. *Footh,* 70 Ill. 590; *James* v. *Dexter,* 112 id. 489; *Supervisors* v. *United States,* 4 Wall. 435.

This discretion is vested specifically in the judge to whom the petition is presented by the statute itself, which excludes the possibility of its being vested elsewhere by implication. Starr & Cur. Stat. chap. 12, sec. 1; *McPhail* v. *People,* 160 Ill. 77; *Schlattweiler* v. *St. Clair County,* 63 id. 449.

*Quasi* judicial power is merely the exercise of judgment as to how to perform a ministerial act. The exercise of discretion as to whether to act or not involves legal considerations and is a judicial act outside the constitutional scope of executive authority. *Owners of Lands* v. *People,* 113 Ill. 296; *People* v. *Chase,* 165 id. 527; *People* v. *Simon,* 176 id. 165; *Poppen* v. *Holmes,* 44 id. 360.

The judicial power cannot be exercised by an executive officer but is vested exclusively in members of the judicial department. Const. art. 3, sec. 1, and art. 6, secs. 1, 29; *Maxwell* v. *People,* 189 Ill. 546; *State* v. *Maynard,* 14 id. 419; *Telegraph Co.* v. *Bank,* 74 id. 217.

The State's attorney and Attorney General are members of the executive department. Const. art. 5, sec. 1.

*Quo warranto* is the proper and only remedy for usurpation of an office in a private corporation. *Lawson* v. *Kolbenson,* 61 Ill. 405; Thompson on Corp. sec. 764; Angell & Ames on Corp. sec. 738.

*Mandamus* is the proper remedy to enforce action by a public official, to which the petitioner has a right. *Supervisors* v. *United States,* 4 Wall. 435; *Dental Examiners* v. *People,* 123 Ill. 227.

ROSENTHAL & HAMILL, (CHARLES GOODMAN, of counsel,) for appellee:

A petition for *mandamus* must show that the petitioner has been injured in his personal interests by the refusal of the defendant to do a duty imposed upon him by law, otherwise *mandamus* will not lie. *People* v. *Benevolent Ass.* 98 Ill. 637; *North* v. *Trustees,* 137 id. 296; *People* v. *Olsen,* 215 id. 620; *Kenneally* v. *Chicago,* 220 id. 485.

It is doubtful whether *quo warranto* is the proper remedy where merely private interests are involved, and therefore the State's attorney was justified in refusing to sign the petition for *quo warranto. People* v. *Drainage Comrs.* 31 Ill. App. 219; *People* v. *Cooper,* 139 Ill. 461; *People* v. *Ridgley,* 21 id. 64; *People* v. *Railway Co.* 54 Ill. App. 348.

A writ of *mandamus* will always be refused where the petition fails to show that any practical benefit would accrue to the petitioner in case the writ were allowed. *Gormley* v. *Day,* 114 Ill. 185.

Both at common law and under the Quo Warranto statute (chap. 112, sec. 1,) the State's law officers (here the

Attorney General and State's attorney) are invested with discretionary powers, the exercise of which the courts will not compel or control. *Porter* v. *People,* 182 Ill. 516; *Hesing* v. *Attorney General,* 104 id. 292; *People* v. *Attorney General,* 22 Barb. 114; *Attorney General* v. *Ironmongers Co.* 2 Beav. 314; *Attorney General* v. *Wright,* 3 id. 447.

*Mandamus* does not lie to compel an officer to exercise discretionary powers. *People* v. *Highway Comrs.* 118 Ill. 239; *People* v. *Anthony,* 129 id. 218; *Kelly* v. *Chicago,* 62 id. 279; *People* v. *Reddick,* 181 id. 334; *People* v. *Knickerbocker,* 114 id. 539.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This controversy involved the construction of section 1 of chapter 112, Hurd's Revised Statutes of 1905, which reads: "That in case any person shall usurp, intrude into, or unlawfully hold or execute any office or franchise, or any office in any corporation created by authority of this State, (or any person shall hold or claim to hold or exercise any privilege, exemption or license, which has been improperly or without warrant of law issued or granted by any officer, board, commissioner, court, or other person or persons authorized or empowered by law to grant or issue such privilege, exemption or license,) or any public officer shall have done, or suffered any act which, by the provisions of law, works a forfeiture of his office, or any association or number of persons shall act within this State as a corporation without being legally incorporated, or any corporation does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises powers not conferred by law, or if any railroad company doing business in this State shall charge an extortionate rate for the transportation of any freight or passenger, or shall make any unjust discrimination in the rate of freight or passenger tariff over or upon its railroad, the Attorney General or State's attorney of the proper county,

either of his own accord or at the instance of any individual relator, may present a petition to any court of record of competent jurisdiction, or any judge thereof in vacation, for leave to file an information in the nature of a *quo warranto* in the name of the People of the State of Illinois, and if such court or judge shall be satisfied that there is probable ground for the proceeding, the court or judge may grant the petition, and order the information to be filed and process to issue. When it appears to the court or judge that the several rights of divers parties to the same office or franchise, privilege, exemption or license, may properly be determined on one (1) information, the court or judge may give leave to join all of such persons in the same information, in order to try their respective rights to such office, franchise, privilege, exemption or license."

It is contended by the appellee that this statute vests the State's attorney of the proper county with an arbitrary discretion in reference to seeking leave to file an information in the nature of a *quo warranto* in the name of the people; that in the exercise of that discretion he cannot be controlled by the courts, and that he may refuse to seek the leave for any reason which to him seems sufficient or may refuse when no reason at all can be assigned for so doing; while appellant argues that in a case such as that now before us, where the proposed individual relator has a personal and private interest in the litigation which he desires to set on foot and where the interest of the public is purely or largely theoretical, the only discretion vested in the legal representative of the people is a discretion to determine whether the documents presented to him by the individual are in proper legal form, and whether the party seeking the institution of the suit presents evidence of such facts as establish his legal right to the remedy to be afforded by judgment against the respondent in the *quo warranto* proceeding.

Originally a proceeding of this characer was by writ of *quo warranto* against any one who claimed or usurped any

office, franchise or liberty, to inquire by what authority he
supported his claim, in order to determine the right. Later
the practice was changed and an information in the nature
of a writ of *quo warranto* succeeded the former method.
(3 Blackstone's Com. 262, 263.) By the common law
the proceeding in *quo warranto* was employed exclusively
as a prerogative remedy, to punish a usurpation of fran-
chises or liberties granted by the crown, and never as a
remedy for private citizens desiring to test the title of per-
sons claiming to exercise a public franchise or desiring to
establish a private right. In England the information, as
a means of investigating and determining civil rights be-
tween parties, owes its origin to the statute of 9 Anne, chap-
ter 20, which authorized and required the proper officer to
file the information by leave of court, upon the relation of
any person desirous of prosecuting the same, against any
person usurping or intruding into any municipal office or
franchise in the kingdom. (High on Extraordinary Legal
Remedies,—3d ed.—sec. 602.) That statute, however, hav-
ing been passed in the year of our Lord 1710, has never
been in force in this State.

It will be observed from examination of section 1, *supra,*
that the proceeding is made the vehicle for the assertion of
many rights, both private and public, which could not have
been vindicated by this method at the common law. As
originally used, the proceeding was criminal in character,
and the offender, upon conviction, was liable both to fine
and imprisonment, as well as ouster from the franchise or
liberty which he had wrongfully usurped. Under our stat-
ute the proceeding is, in fact, a civil remedy when used
for the protection of private rights, and in the event of a
judgment in favor of the defendant, costs may be awarded
against the relator. (Chap. 112, sec. 6, *supra.*)

By the common law, and in England prior to the pas-
sage of the Statute of Anne, arbitrary discretion was lodged
in the Attorney General to determine whether he would

move, and that discretion could not be controlled or reviewed. (*Attorney General* v. *Ironmongers' Co.* 2 Beav. 314; *Attorney General* v. *Wright,* 3 Beav. 447; *People* v. *Attorney General,* 22 Barb. 114; *People* v. *Fairchild,* 8 Hun, 334; *In re Gardner,* 68 N. Y. 467; *Everding* v. *McGinn,* 23 Ore. 15.) In extending the scope of this proceeding the legislature of this State has not by express words changed or altered the common law so far as the discretion vested in the Attorney General or State's attorney is concerned, but the character of the discretion possessed by these officers must be determined, to some extent, by consideration of the rights which the law-making power has committed to that discretion.

By the common law the information in the nature of a *quo warranto* was solely a prerogative remedy. No suit was ever prosecuted by that remedy at the instance of a private person or for the assertion of a private right. It was used only where a wrong had been done, or was alleged to have been done, to the king, and it was therefore the rule that only the king, or his representative, should determine whether a suit should be brought to enforce the right of the king. Where jurisdiction is given the courts to enforce the rights of private individuals by this method it is manifest that the power to determine whether the suit should be brought should not be lodged in the legal representative of the sovereign power, when, as here, the right of the citizen is substantial and the concern of the State with regard to the litigation is practically or entirely theoretical. In such case, the reason for the rule having failed the rule itself should fail. This is well illustrated by cases of one class which are constantly arising in this State. These are cases where it is charged by the owner of realty that his property has been wrongfully included within a drainage district, and he has attempted to have that question determined upon an application made for a judgment and order of sale against his property for the collection of a tax or assess-

ment imposed by the drainage authorities. In such instances this court has invariably held that he could not raise the question in that way, but that he must resort to an information in the nature of a *quo warranto* for the purpose of determining whether or not the corporation is engaged in exercising powers not conferred by law. (*Shanley* v.`*People*, 225 Ill. 579, and cases there cited.) It is manifest that it would be a mere travesty to say, as was said in the *Shanley case*, that in such case the action of the corporate authorities "can only be reviewed in a direct proceeding by *quo warranto*," and then to say that whether or not application shall be made for leave to file an information in the nature of *quo warranto* for the purpose of reviewing the action of the commissioners rests solely in the arbitrary discretion of the legal representative of the people, who has no interest in the welfare of the proposed relator, and who may give weight to the fact that it is for the benefit of a large number of property owners who are properly within the district that he should refuse to permit the use of his name, and who may regard that as a sufficient reason for declining to act. It is against the policy of our law that the arbitrary power to determine whether the individual shall have the privilege to be heard in the courts in the assertion of his private right should be lodged in any tribunal or officer not a court or judicial officer as distinguished from a non-judicial or *quasi* judicial officer.

Appellee urges that it cannot consistently be held that the State's attorney has an arbitrary discretion as to whether he will seek leave to file the information where no interest is involved save that of the public and that he has no discretion where the interest of a private individual is concerned, for the reason that such discretion as he has is conferred upon him by the following words from the statute: "The Attorney General or State's attorney of the proper county, either of his own accord or at the instance of any individual relator, may present a petition to any court of

record of competent jurisdiction," which words apply alike to cases in the prosecution of which the people of the State alone are interested and to cases in which no substantial right is to be asserted except the right of the relator, and in which the interest of the public is purely or entirely theoretical. It is urged that any such construction would result in holding that the word "may," in the language last quoted, means "may" in cases where only the public interest is at stake and means "shall" where private interests are involved; and it is said to be an anomaly to hold that the same word in the same sentence of a statute may mean one thing when applied to one class of cases and another thing when applied to another class of cases.

We do not think this situation presents any serious difficulty. When the legislature extended the right to private individuals to assert private rights by this proceeding, it is apparent that it was intended that they should have an opportunity to seek redress for their wrongs by making application to a court, or judge thereof, for leave to file an information. The duty resting upon the State's attorney to sign and present a petition for leave to file an information in the nature of a *quo warranto* where evidence of facts is properly presented to him by a proposed relator which shows *prima facie* that the relator is legally entitled to the relief, in reference to a private right, which would be afforded him by a judgment in his favor in a *quo warranto* proceeding, is an absolute one. It follows, therefore, that where he declines to act for any reason other than that the facts, evidence of the existence of which is presented to him, do not warrant the relief which the proposed relator seeks, or that the petition and affidavit or affidavits presented to him are not in proper legal form, his declination is an abuse of his discretion, conceding that his construction of the statute be correct, and such an abuse of discretion as amounts to a refusal on his part to exercise his discretion at all and to a refusal to perform the duty enjoined upon him by the law.

In *Village of Glencoe* v. *People,* 78 Ill. 382, it was said (p. 389) : "The discretion vested in the council cannot be exercised arbitrarily for the gratification of feelings of malevolence or for the attainment of merely personal and selfish ends. It must be exercised for the public good, and should be controlled by judgment and not by passion or prejudice. When a discretion is abused and made to work injustice it is admissible that it shall be controlled by *mandamus.*"

In *Illinois State Board of Dental Examiners* v. *People,* 123 Ill. 227, the following language was used (p. 241) : "But if a discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise. They will interfere where it is clearly shown that the discretion is abused. Such abuse of discretion will be controlled by *mandamus.* A public officer or inferior tribunal may be guilty of so gross an abuse of discretion or such an evasion of positive duty as to amount to a virtual refusal to perform the duty enjoined or to act at all in contemplation of law. In such a case *mandamus* will afford a remedy.—Tapping on Mandamus, 66 and 19; Wood on Mandamus, 64; *Comrs. of the Poor* v. *Lynah,* 2 McCord, (S. C.) 170; *People* v. *Perry,* 13 Barb. 206; *Arberry* v. *Beavers,* 6 Tex. 457." To the same effect are statements found in *People* v. *Commissioners,* 176 Ill. 576, and *People* v. *VanCleave,* 183 id. 330.

Courts of last resort in our sister States have frequently found themselves confronted with the same difficulty which we are now considering, where legislatures have extended the scope of the remedy by *quo warranto* to include the enforcement of private right but have failed to impose by express words a positive duty upon the Attorney General or State's attorney to proceed at the instance of the individual relator, or have failed to provide that the proceeding may be instituted without the co-operation of those officers. It has sometimes been held that the arbitrary discretion of the

public prosecutor still exists as at common law, and that if he refuses to lend his name to the proceeding the individual relator is without remedy, even though the refusal of the officer results from political, selfish or other improper considerations. In other States relief for the relator has been suggested by various methods, not substantially different, so far as the result to be attained is concerned.

In the case of *The Bank of Mt. Pleasant,* 5 Ohio, (Hammond,) 250, it was held: "If in a proper case the prosecuting attorney decline to make application for the rule, the court will order him to make it peremptorily or direct it to be made by another person, according to circumstances."

In *State* v. *Barry,* 3 Minn. 190, (Reprint ed.) it was held that the discretion of the Attorney General was not exclusive or absolute, and that the relator's right to have the application made was an absolute one, upon a probable or *prima facie* case being made out to the Attorney General; that the discretion as to whether the suit should be brought in such case was with the court or judge alone, and that in determining whether to permit the filing of the information the court or judge could give notice to the defendant and hear both sides of the question, "which advantages are not possessed by the Attorney General." It was further held that the papers there presented made a sufficient case, and the issuance of a writ of *mandamus* requiring the Attorney General to make application was directed.

In *State ex rel.* v. *Dahl,* 69 Minn. 108, it was said that under some circumstances it might, in the exercise of a sound judicial discretion, become the duty of the court to permit an information in the nature of a *quo warranto* to be filed by a private person, even where he had no personal interest in the question distinct from the public interest, notwithstanding the Attorney General had refused to give his consent to such filing.

In *State* v. *Deliesseline,* 1 McCord's L. 52, in discussing this question the court expressed the view "that the

Attorney General may, in any case, apply to the court for directions, and that the court, although, perhaps, it cannot order, may aid him with its advice. There may be many cases where it would seem peculiarly proper and some where it would be absolutely necessary that it should be done. The Attorney General may stand in such relation to the party against whom an information is required as not to be able to trust his own judgment or in such that it ought not to be trusted by the State. Such a proceeding might be required against the Attorney General himself, in which case he could not act."

In *Lamoreaux* v. *Attorney General,* 89 Mich. 146, where the Attorney General claimed an arbitrary discretion, the court said: "If the Attorney General and prosecuting attorney can refuse, for no good reason, to file an information of this kind upon the relation of one who claims that he was legally elected to an office, or of any elector, citizen and tax-payer who is interested in the due administration of public affairs, then it may happen that if both of these officers belong to the same political party as the incumbent of the office they would for that reason refuse to move in the matter, and keep in any county office for the full term a person not legally elected or legally qualified to hold it. The law, of course, presumes that every public officer will do his duty without fear or favor or partisan bias, and this is found to be the general rule; but the current history of our day is full of instances of such intense party feeling that persons are frequently applying to the courts—the last resort—for the protection and enforcement of rights denied to them for partisan and political reasons only. * * * The courts ought not to consent to any holding which will put the power arbitrarily and without remedy or redress into the hands of any one, two or three men to prevent a candidate for office from establishing his election to any office, or any citizen from inquiry, in good faith, into the rights of any person to hold an office. This would certainly be the result of the position taken by the Attorney General."

In *Cain* v. *Brown,* 111 Mich. 657, *mandamus* was entertained, without question, to compel the prosecuting attorney to file an information in the nature of a *quo warranto,* but the writ was there denied for the reason that the prosecutor was justified in considering the evidence presented to him insufficient.

In *People* v. *Ridgley,* 21 Ill. 66, and in *People* v. *Waite,* 70 id. 26, it was said that our *quo warranto* statute was a substantial copy of the Statute of Anne. The question now before us was not considered by the court in those cases, and they are therefore not in point. The English statute just referred to provides that "it shall and may be lawful to and for" the proper officer, by leave of court, to file or "exhibit" the information, (12 Pickering's Stat. at Large, 190,) while our statute provides that the Attorney General or State's attorney "may present a petition" to the court, or the judge thereof, for leave to file the information. The Statute of Anne does not expressly require the officer of the crown to file the application for leave, and yet *Rex* v. *Trelawney,* 3 Bur. 1616, and *Rex* v. *Wardroper,* 4 id. 1964, hold that under that statute the officer is without discretion in the matter but must apply at the instance of the private relator, and that the only discretion is in the court; and in *State* v. *Elliott,* 13 Utah, 200, it was said that "except when changed by statute the rule of procedure is practically the same in this country as in England" under the Statute of Anne.

It is contended by appellee, however, that the question has been foreclosed in this State by the decisions of this court in *Hesing* v. *Attorney General,* 104 Ill. 292, and *Porter* v. *People,* 182 id. 516. We think that is a misapprehension, which results from the application of words used by the court in those cases to facts not then before the court and in nowise given consideration at that time. In the case in the 104th the relator had no private interest in the controversy as distinguished from the interest of the public,

and it is said: "His being relator did not convert a purely
public suit into a private one, and entitle him, as against
the Attorney General, to prevent its dismissal," and it was
very properly held, applying the common law rule, that the
Attorney General might dismiss the proceeding if he saw
fit so to do, and that the court would not control his actions
in that respect. In the *Porter case* an information in the
nature of *quo warranto* had been filed in the name of Charles
S. Deneen, State's attorney of Cook county, upon the rela-
tion of certain individuals, but the State's attorney's name
had been used without his consent. Upon the motion of
the prosecutor to finally dispose of the proceeding by dis-
missal, the petition was dismissed "as far as the rights of
the people, only, are concerned, but so far as the private
rights of the said relators are concerned, and in all other
particulars, said motion is denied," and the order attempted
to reserve jurisdiction of the petition and proceeding. In
that case it was held by this court that a *quo warranto* pro-
ceeding cannot be instituted in this State except by the At-
torney General or the State's attorney of the proper county;
and it was further held that the mere fact that petitioners
sought redress for private injuries did not authorize them
to prosecute the action in their own names, and it was said
that for such purpose they might not use the name of the
State's attorney without his consent. In that case the court
seems to have considered the failure of the relators to seek
permission of the Attorney General to use his name, after
the State's attorney had refused to sign the petition, as a
significant fact. The question of the propriety of a resort
to *mandamus* to require the State's attorney or the Attorney
General to proceed in a case where the relator had a per-
sonal and private right and the interest of the public was
largely or entirely theoretical was not before the court for
consideration.

It is, of course, true, that in many cases where the in-
dividual relator has a private and personal interest in the

suit which he seeks to set on foot the public also has a sub-
stantial interest therein.   No injury can result to the public
in such instances, however, by requiring the prosecutor to
proceed, for the reason that the court, or the judge thereof,
when the petition for leave to file the information is pre-
sented, is vested with a sound legal discretion to be exer-
cised in determining whether leave to file the information
should be granted, and the court or the judge thereof may,
in the exercise of that discretion, fully protect the rights of
the public, and may under some circumstances, where the
public weal demands, refuse leave to file the information
although the clear legal right of the relator is established.
(*McPhail* v. *People,* 160 Ill. 77.)   The rights and interests
of the public being thus fully protected by a sound legal dis-
cretion lodged in the court, or the judge thereof in vacation,
it is manifest that there is no occasion for the exercise by
the State's attorney or Attorney General of a discretion to
be used for the same purpose and for no other purpose.

The discretion possessed by the Attorney General at the
common law is no doubt now possessed by the Attorney
General or State's attorney in all cases which are, in fact,
prosecutions on the part of the people and which involve
no individual grievance of the relator.   One such case is
where the wrong is the usurpation of an appointive public
office to which, in the event of judgment of ouster, no par-
ticular individual will have a right to succeed; and another
example is where the object is to secure a judgment ousting
a corporation from the enjoyment of all the franchises which
it exercises.   In cases, however, where the proposed relator
has an individual and personal right, distinct from the right,
if any, of the public, which is enforceable by a proceeding
in *quo warranto,* and where he presents to the State's at-
torney a proper petition for his signature with evidence of
the facts necessary to establish the right, it is the duty of
that officer to apply for leave to file an information in the
nature of a *quo warranto,* and if he refuses when the mat-

ter is properly presented to him, he may be compelled by *mandamus* to sign and file the petition for leave.

The practice which may be followed by one who desires to become relator is to present to the State's attorney a petition addressed to the court, or to the judge thereof in vacation, for leave to file an information in the nature of a *quo warranto,* which petition should be so drawn as to be ready for filing when the signature of the State's attorney is thereto attached. As was suggested in *Cain* v. *Brown, supra,* the affidavit or affidavits accompanying the petition must be full and positive and must be made by a person or persons knowing the facts, and be drawn in such manner as that perjury may be assigned thereon if any material allegation contained therein is false. The affidavit or affidavits accompanying the petition, after being inspected by the State's attorney, should, in case he sign the petition, be presented with it for consideration by the court, or judge thereof, in determining whether to grant the leave asked. The practice pursued by the State's attorney in this case is not a proper one. Upon the petition being presented to him he caused the actual parties to the controversy, by their attorneys, to appear before him, and heard them on the proposition as to whether he should sign and file the petition. This practice has, we understand, been long pursued in certain counties of this State, and we have no doubt that the public prosecutor of Cook, in this particular instance, proceeded as he did believing in good faith that this practice was the correct one. In our judgment the law of this State does not authorize him in any case to conduct a hearing of this character, and he should not have considered the views of the respondent named in the petition or those of his attorneys.

Appellee urges that it is doubtful whether *quo warranto* is the proper remedy in this instance, as merely private interests are here involved. We think an inspection of section 1, *supra,* dispels this doubt, as it expressly gives the

remedy in any case where any person usurps or unlawfully holds any office in any corporation created by authority of this State.

Appellee also argues that *mandamus* will not lie in this instance for certain other reasons. His views, in so far as based on such other reasons, are shown to be erroneous by the case of *People ex rel.* v. *Harris,* 203 Ill. 272.

To the petition for a writ of *mandamus* there were attached as exhibits the unsigned petition for leave to file an information in the nature of *quo warranto,* and with it the affidavit of Edwin O. Raster, the proposed relator, made in support of that petition, both of which had been presented to the State's attorney. We have examined that affidavit as abstracted and think it fully meets the requirements of the law in reference to affidavits of this character. It appears from that affidavit that Raster is secretary and a member of the board of directors of the corporation; that the board of directors consists of ten persons; that by the provisions of the by-laws of the corporation a majority of the board of directors shall be required to constitute a quorum for the transaction of business; that on November 23, 1905, Walter R. Michaelis, who was the treasurer of the corporation, resigned; that on the day last mentioned five members of the board of directors (naming them) met and attempted to hold an election for treasurer of the corporation; that Horace Brand, as a result thereof, claimed, and claims, to have been elected treasurer in place of Michaelis. It is made evident by the affidavit that such election was invalid and illegal because a quorum of the directors was not present at that meeting, and it further appears from direct and positive allegations of fact contained in the affidavit that said Brand has never at any time been properly or legally elected as treasurer of the corporation, but that he has intruded into and unlawfully held the office of treasurer of the corporation since the time of his alleged election on November 23, 1905. Upon consideration of the petition for

leave, and the affidavit accompanying it, to which we have just referred, it became the duty of the State's attorney to sign the petition and present it, with the affidavit, to the court or to a judge thereof in vacation.

The judgment of the circuit court will be reversed and the cause will be remanded to that court, with directions to overrule the demurrer to the petition for a writ of *mandamus.*

                 *Reversed and remanded, with directions.*