(No. 33408.—

THE PEOPLE *ex rel.* Harry D. McCarthy *et al.,* Appellees,
*vs.* JOSEPH A. FIREK *et al.,* Appellants.

*Opinion filed March 24, 1955.*

DUDLEY R. SULLIVAN, of Chicago, for appellants.

WISCH & CRANE, of Chicago, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In 1951 the General Assembly amended the act of 1936 relating to sanitary districts by providing for a referendum to determine whether or not a district organized under the act should be dissolved. (Ill. Rev. Stat. 1951, chap. 42, pars. 444-447.) Thereafter, in October of 1951, pursuant to a petition filed in the county court of Cook County under the amended act an election was held to determine whether the Norwood Park Sanitary District should be dissolved. The vote was in favor of dissolution, and on December 5, 1951, the judge of the county court entered an order declaring the district dissolved, directing the incumbent trustees to wind up the affairs of the district, and ordering that no new obligations be incurred. On March 12, 1954, several voters, taxpayers, and owners of real estate residing within the district filed a petition in the

circuit court of Cook County for leave to file a complaint in *quo warranto* against the trustees. The petition alleged that despite the order of dissolution the trustees of the district had continued to operate it as a going corporation, and that the Attorney General and the State's Attorney of Cook County, although requested to institute *quo warranto* proceedings, had failed to do so.

The circuit court granted the petition, and the case was tried on a stipulation that the defendants had continued to levy taxes and to carry on the affairs of the district in the same manner as before the dissolution proceedings. The defendant trustees have appealed from a judgment ousting them from office and fining each of them one dollar. A franchise and the validity of a statute are involved. *People ex rel. Samuel* v. *Cooper,* 139 Ill. 461.

The first issue raised is procedural. Defendants contend that the relators were not entitled to bring this action. Section 2 of the Quo Warranto Act provides: "The proceeding shall be brought in the name of the People of the State of Illinois by the Attorney General or State's Attorney of the proper county, either of his own accord or at the instance of any individual relator; or by any citizen having an interest in the question on his own relation, when he has requested the Attorney General and State's Attorney to bring the same, and the Attorney General and State's Attorney have refused or failed so to do, and when, after notice to the Attorney General and State's Attorney, and to the adverse party, of the intended application, leave has been granted by any court of competent jurisdiction, or any judge thereof." (Ill. Rev. Stat. 1953, chap. 112, par. 10.) Defendants maintain that the term "interest" means an interest other than that possessed by residents, taxpayers, and property owners of the district.

By a process of statutory evolution the common-law prerogative writ of *quo warranto,* which could be maintained only by the crown, has become an action maintain-

able by private individuals. The story of this evolution has been frequently told and need not be repeated here. (See, *e.g., People ex rel. Raster* v. *Healy,* 230 Ill. 280; *People* v. *Wood,* 411 Ill. 514.) Under the Quo Warranto Act as it existed prior to 1937, only the Attorney General or the State's Attorney could institute the action, and they were required to secure leave of court before doing so. These officers could commence the action upon their own relation or upon the relation of a private individual. (Ill. Rev. Stat. 1935, chap. 112, par. 1.) A private individual who desired that such an action be brought was required to apply to the Attorney General or State's Attorney. Those officers did not, however, have unlimited discretion to refuse the application, and under certain circumstances they could be compelled by *mandamus* to bring the action.

In 1937 the former *quo warranto* statute was repealed and a new one enacted. The pertinent section of the present act is set forth above. Although the term "interest" appeared for the first time in the 1937 act, decisions rendered under earlier statutes have dealt with the quality of interest necessary in order to entitle a private individual to have the action instituted.

The leading case is *People ex rel. Raster* v. *Healy,* 230 Ill. 280, a *mandamus* action brought to compel the State's Attorney to file a *quo warranto* action. Concerning the interest to be required of a private individual to enable him to compel action by the State's Attorney, the court said: "Where jurisdiction is given the courts to enforce the rights of private individuals by this method it is manifest that the power to determine whether the suit should be brought should not be lodged in the legal representative of the sovereign power, when, as here, the right of the citizen is substantial and the concern of the State with regard to the litigation is practically or entirely theoretical. In such case, the reason for the rule having failed the rule itself should fail. This is well illustrated by cases of one

class which are constantly arising in this State. These are cases where it is charged by the owner of realty that his property has been wrongfully included within a drainage district, and he has attempted to have that question determined upon an application made for a judgment and order of sale against his property for the collection of a tax or assessment imposed by the drainage authorities. In such instances this court has invariably held that he could not raise the question in that way, but that he must resort to an information in the nature of a *quo warranto* for the purpose of determining whether or not the corporation is engaged in exercising powers not conferred by law. (*Shanley* v. *People,* 225 Ill. 579, and cases there cited.) It is manifest that it would be a mere travesty to say, as was said in the *Shanley case,* that in such case the action of the corporate authorities 'can only be reviewed in a direct proceeding by *quo warranto*,' and then to say that whether or not application shall be made for leave to file an information in the nature of *quo warranto* for the purpose of reviewing the action of the commissioners rests solely in the arbitrary discretion of the legal representative of the people, who has no interest in the welfare of the proposed relator, and who may give weight to the fact that it is for the benefit of a large number of property owners who are properly within the district that he should refuse to permit the use of his name, and who may regard that as a sufficient reason for declining to act. It is against the policy of our law that the arbitrary power to determine whether the individual shall have the privilege to be heard in the courts in the assertion of his private right should be lodged in any tribunal or officer not a court or judicial officer as distinguished from a non-judicial or *quasi*-judicial officer." 230 Ill. 280, 288-289.

In the *Healy case* the court recognized that the line between the interest of the public and that of the individual relator is not always clear and unmistakable: "It is,

of course, true, that in many cases where the individual relator has a private and personal interest in the suit which he seeks to set on foot the public also has a substantial interest therein. No injury can result to the public in such instances, however, by requiring the prosecutor to proceed, for the reason that the court, or the judge thereof, when the petition for leave to file the information is presented, is vested with a sound legal discretion to be exercised in determining whether leave to file the information should be granted, and the court or the judge thereof may, in the exercise of that discretion, fully protect the rights of the public, and may under some circumstances, where the public weal demands, refuse leave to file the information although the clear legal right of the relator is established. (*McPhail* v. *People,* 160 Ill. 77.) The rights and interests of the public being thus fully protected by a sound legal discretion lodged in the court, or the judge thereof in vacation, it is manifest that there is no occasion for the exercise by the State's Attorney or Attorney General of a discretion to be used for the same purpose and for no other purpose." 230 Ill. 280, 295-296.

The net of the court's decision was that the absolute discretion as to the institution of the action which the Attorney General had at common law remained in the Attorney General and State's Attorney "in all cases which are, in fact, prosecutions on the part of the people and which involve no individual grievance of the relator." But in cases in which "the proposed relator has an individual and personal right, distinct from the right, if any, of the public," it was said to be the duty of the State's Attorney to apply for leave to institute the action when a "proper petition" with evidence of the facts necessary to establish the right, was presented to him. 230 Ill. 280, 296.

The major purpose of the present statute appears to have been to simplify the procedure and to eliminate the cumbersome practice of filing *mandamus* actions to compel

the public law officers to institute *quo warranto* proceedings upon the relation of private individuals. The requirement that the Attorney General or the State's Attorney must obtain leave of court before the action may be instituted has been eliminated. And the role of those officers in cases instituted upon the relation of a private individual has been changed. The private citizen is required to request the public law officers to institute the action but upon their refusal to do so he may apply directly to the court for leave to file on his own relation.

Following the enactment of the present statute, however, the realistic recognition that the categories of public and private right are not mutually exclusive, which was expressed in the *Healy case,* appears to have been supplanted by a classification of "purely public interests involving no personal or individual rights differing from those of the general public," on the one hand, and "a purely individual and substantial interest, differing from the general public, and in which the interest or concern of the State may be small or entirely theoretical" on the other. (*Rowan* v. *City of Shawneetown,* 378 Ill. 289, 295.) Relying on *People v. Fullenwider,* 329 Ill. 65, and *Newman v. United States,* 238 U.S. 537, the court said in the *Shawneetown case* that the interest required of a private individual was one "personal and peculiar to him, and not one shared in common by other members of the general public. The interest which an individual has as a taxpayer or as a member of the general public was held not to be sufficient." The view of the *Shawneetown case* was also taken in *Adair* v. *Williams,* 407 Ill. 309, where a resident and taxpayer sought to challenge the legality of the organization of a village. (See also *People ex rel. Buchanan* v. *Mulberry Grove School Dist.* 390 Ill. 341; *People* v. *Wood,* 411 Ill. 514; cf. *People ex rel. Universal Oil Products Co.* v. *Village of Lyons,* 400 Ill. 82.) The *Fullenwider* and *Newman cases,* which gave currency to the insufficiency of the

interest of a taxpayer, were themselves challenges directed to the right of a respondent to hold public office. To prevent officious intermeddling, the right to maintain such actions has generally been restricted to the rival claimant. A holding that the interest of one taxpayer among many does not justify the maintenance of such an action, does not, we think, warrant a generalization that the interest of a taxpayer is never sufficient. The distortion which may occur when attention is focused upon the interest of the public to the exclusion of the interest of a taxpayer is apparent in the case of this sanitary district, whose territory extends one and one-half miles in one direction, and one and three-quarter miles in the other.

The ruling which the appellants seek would recreate the procedural impasse referred to in the *Healy case*. For it is still the doctrine of this court that attacks upon the proceedings by which a municipal corporation was formed, or by which territory was annexed to, or detached from it, cannot ordinarily be made in actions to collect taxes, or in suits in equity to enjoin such collection, but that such objections can only be raised by bringing an action of *quo warranto*. See, *e.g., Lackey* v. *Pulaski Drainage Dist.* 4 Ill. 2d 72; *cf. Shanley* v. *People,* 225 Ill. 579; *People ex rel. Selby* v. *Dyer,* 205 Ill. 575.

Moreover, the interest of a citizen in the taxes to be collected from him is obviously distinct, for many purposes, from a general public interest in the enforcement of the law. It is a personal and substantial interest, and it does not become the less so because other citizens have a similar interest. The decision in the *Rowan case* can thus be explained only on the assumption that the statute requires a citizen's interest to be unique, or at least uncommon. In view of the number of different local governmental units which may exist under our laws it cannot be assumed that public law officers will undertake to liti-

gate every instance of allegedly invalid organization, annexation, disconnection, and dissolution.

The objection in the present case is based on an allegedly valid act of dissolution rather than on the supposed invalidity of an act or organizations, so it may stand on a different footing. (See *Village of Mount Prospect* v. *Reese*, 342 Ill. 216; but *cf. Shriver* v. *Day, 276* Ill. 403; *Comrs. of Boone's Pond Drainage Dist.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 268 Ill. 264; see also *People ex rel. Davis* v. *Spence,* 3 Ill. 2d 244; *People ex rel. Lerch* v. *Sandman,* 338 Ill. 404; *People ex rel. Shrout* v. *Long,* 328 Ill. 297; *People ex rel. Freshwater* v. *Bonham,* 286 Ill. 286.) As to that we express no opinion. But even in those cases where the taxpayer is not wholly deprived of a remedy, the *Rowan decision* is still productive of difficulty, for it would postpone the determination of corporate existence until after obligations had been incurred and taxes levied.

For these reasons we agree with the trial court that the plaintiffs in this case had sufficient interest to maintain the action. *Rowan* v. *City of Shawneetown,* 378 Ill. 289, and *Adair* v. *Williams,* 407 Ill. 309, are overruled.

On the merits it is said first that the act under which the dissolution was effected did not apply to this district. This proposition is based on the fact that the statute under which the Norwood Park Sanitary District was formed in 1938 contained no provision for dissolution. Such a provision was first added in the amendatory act of 1951, which was subsequently repealed. (See Ill. Rev. Stat. 1953, chap. 42, pars. 412-443n; Laws of 1951, p. 1811; Laws of 1953, p. 23.) Section 1 of the amendatory act stated: "Sections 33, 34, 35 and 36 are added to 'An Act to create sanitary districts * * *' approved July 2, 1936, as amended, the added sections to read as follows: '§ 33. Any sanitary district created under this Act may be dissolved as follows

* * *.' " The defendants contend that the words "this Act" should be construed to mean the drainage act as amended by the 1951 amendment, thus limiting the applicability of the amendment to districts created after 1951. This point is not well taken. The phrase "this Act" obviously did not refer to the act of 1951, and therefore it must refer to the original act of 1938. The fact of amendment did not create a new "Act" distinct from the one which had been amended. (Ill. Rev. Stat. 1953, chap. 131, par. 2; *City of Altamont* v. *Baltimore and Ohio Railroad Co.* 348 Ill. 339.) The act of 1951 did not alter the procedure for the creation of sanitary districts, nor did it make any change in the structure or powers of such districts. It did nothing more than provide a method of dissolution, and no reason is suggested why it should not apply to districts created before 1951 as well as to those created subsequently.

It is next suggested that the proceedings for dissolution were defective because the petition for election, the notice of election, and the ballots all referred to the "Sanitary District of Norwood Park" instead of the "Norwood Park Sanitary District." Since the latter is the correct name of the district, the argument is made that the district was never dissolved. So far as the ballot is concerned, the designation of the district conforms to the style prescribed by the statute. (Laws of 1951, p. 1811; Ill. Rev. Stat. 1951, chap. 42, par. 444.) In any event since the defendants do not contend that any voters were misled, the discrepancy was without significance. (*Cf. People* v. *Birdsong,* 398 Ill. 455, 465.) Objection is also made to the division of the district into three precincts for the election by the judge of the county court. Although such division was not authorized by the statute, neither was it forbidden, and no allegation is made that the result was affected.

The defendants also urge that the amendment of 1951 violates article III, article II, section 14, and article IV, section 28 of the constitution. The first charge is based on

the fact that the act fails to specify the disposition to be made of the sewage system beyond a direction that the trustees shall "make the necessary conveyances of the title to the sanitary district property." (Ill. Rev. Stat. 1951, chap. 42, par. 445.) It is not uncommon for municipal corporations to be given a general power to dispose of property, either during their existence or upon dissolution. (See Ill. Rev. Stat. 1953, chap. 15½, par. 68.17; chap. 24, pars. 46-1, 59-1, 59-4; chap. 61, par. 131; chap. 81, par. 27.14.) It can hardly be required that the General Assembly name each purchaser in advance or describe how the property shall be divided. Since the appropriate disposition of property will obviously vary with the location and character of each district, decisions in this area must necessarily be confided to the discretion of the trustees. *Cf. Owens* v. *Green,* 400 Ill. 380, 395-396.

The second charge of invalidity is that the act imposes no duty on any officer or public body to levy and collect taxes in the future so as to discharge those bonds which have not yet matured. Assuming that this complaint may be advanced by the trustees (see *Hansen* v. *Raleigh,* 391 Ill. 536, 546; *People ex rel. O'Connell* v. *Chicago and Western Illinois Railroad Co.* 256 Ill. 388, 393; *Burke* v. *Snively,* 208 Ill. 328, 358; but *cf. Deneen* v. *Deneen,* 293 Ill. 454,) we think it is without merit. The original bond ordinance under which these securities were issued required the county clerk to extend the necessary rate to meet the district's obligations, and the statute provides, "The dissolution of any sanitary district shall not affect the obligation of any bonds issued or contracts entered into by such district, nor invalidate the levy, extension or collection of any taxes or special assessments upon the property in the debtor district, but all such bonds and contracts shall be discharged." (Ill. Rev. Stat. 1951, chap. 42, par. 446.) Nor do we find it objectionable that the statute does not direct that the taxes collected shall be paid over to the

bondholders. If there is a refusal the courts will provide a remedy. (See *Chalstran* v. *Board of Education,* 244 Ill. 470.) Other objections now made by defendants in this connection were not advanced in the trial court, and we do not notice them.

The final objection goes to section 34 of the act, which provides that upon dissolution of the district, "there shall be no further appointments for trustees." Since the incumbent trustees are charged with the duty of closing up the affairs of this district, this clause is said to contravene the constitutional injunction of article IV, section 28, that "No law shall be passed which shall operate to extend the term of any public officer after his election or appointment." The statutory provision does not purport to extend the terms of the trustees. It is possible of course that the trustees could not complete their duty to wind up the district within the unexpired period of their appointed terms, but since the defendants admit that they made no attempt to perform this duty, we do not think that they can now complain on this score.

The judgment of the circuit court must therefore be affirmed.

*Judgment affirmed.*