THE PEOPLE *ex rel.* PAUL E. HAMER, Plaintiffs-Appellants, *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT No. 113, COUNTY OF LAKE, Defendant-Appellee.

(No. 70-75;

Second District—February 12, 1971.

Paul E. Hamer, of Northbrook, for appellants.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Relators, as residents and owners of real and personal property in defendant's school district, appeal from a judgment order denying their application for leave to file a complaint in *Quo Warranto* under the provisions of Ill. Rev. Stat. 1967, ch. 112, pars. 9, *et seq.* The application was originally filed as Count V of a five-count complaint and severed for trial.[1] This action challenged the authority of the school board to issue tax anticipation warrants when, allegedly, there was money in the treasury. Violation of Ill. Rev. Stat. 1967, ch. 85, pars. 901, *et seq.* is charged.

The judgment order appealed from contained the following findings:

"1. That the said Paul E. Hamer and June T. Hamer have no personal or private right differing from that of the general public, for the enforcement of which they apply for leave to file the complaint in *quo warranto* herein.

2. That to give said applicants leave to file a complaint in *quo warranto* herein would not be in the public interest or serve any good and useful purpose.

3. That applicants herein seek to test how the Respondent-Defendant exercise certain powers conferred upon it by law; that the Writ of *Quo Warranto* is not the proper method of making such inquiry."

Relators oral motion to amend their application (Count V) was denied after the court was advised of the nature of the amendment, and the severed action was dismissed.

---

[1] Count I sought a declaratory judgment; Count II prayed for *mandamus,* and Count III asked for equitable relief. Count II was dismissed, but Counts I and III are pending on an amended complaint which also added a Count IV for *mandamus* alleging acts subsequent to the filing of the original complaint.

At the outset we must consider whether the relators have a sufficient interest to file for *Quo Warranto*. The application in general terms alleges that the relators are citizens, residents, and owners of real and personal property subject to taxation in the district and that as such have an interest sufficient to question whether the defendant has exercised powers not conferred by law. Attached to the application and incorporated therein is the proposed complaint in *Quo Warranto* which includes the allegation "that the defendant is unlawfully executing its office in issuing tax anticipation warrants and investing public funds and that the defendant is exercising a privilege in issuing tax anticipation warrants and investing public funds without warrant of law". The nature of the proposed amendment at the conclusion of the hearing on the application is found in Mr. Hamer's statement to the court that the district purchased securities which matured or were redeemable on dates long after the board knew they would be required as indicated by budget deficits in the building and educational funds; that the warrants were issued in the amount of $2,000,000 at a cost of $2,750,000 at a time when there was money in the treasury in the form of time deposit bills and notes; that the warrants were issued in excess of the amounts needed, in advance of the time the funds would be required, and for a longer time than necessary, resulting in additional expense to the taxpayer in the obligation to pay more taxes than necessary.[2]

Defendant argues that the relators have no standing since they have shown no interest different from that of all other taxpayers of the district, citing *People v. Wood* (1952), 411 Ill. 514; *People v. Village of Buffalo Grove* (1967), 85 Ill.App.2d 382 and similar cases. Relators, however, claim that a taxpayer's interest is sufficient to allow the application, primarily relying upon *People ex rel. McCarthy v. Firek* (1955), 5 Ill.2d 317; *Paepcke v. Public Building Com.* (1970), 46 Ill.2d 330; and *People ex rel. Henderson v. City of Bloomington* (1962), 38 Ill.App.2d 9.

■■ *Paepcke* may be distinguished in that it holds a taxpayer need not show an interest different from that of the general public in order to have standing to *enjoin* an alleged misuse of public property held in public trust. However, we are of the opinion that the general rule of *People v. Wood* still applies to *quo warranto* actions and requires more than a mere showing that one is a taxpayer. The additional qualification is stated in *Firek* and *Bloomington*: A taxpayer may have a sufficient inter-

---

[2] In substance it appeared that the practice referred to was based on the fact that the warrants were free from income tax to the institutional purchasers; the board could invest the proceeds in government obligations yielding a higher rate of interest than it paid on the warrants.

est to sustain *quo warranto* if he shows a high probability or certainty that the challenged action will result in an increase in his taxes. When this is shown, a taxpayer has a personal and substantial interest even though other citizens may have a similar interest.

■■ The application may conform to law where it alleges in general terms, facts sufficient to state a *prima facie* case. (See Ill. Rev. Stat. 1967, ch. 112, par. 11; *People v. Lewistown School Dist.* (1944), 388 Ill. 78, 86; *People ex rel. Phelps v. Kerstein* (1952), 413 Ill. 333, 336; *People ex rel. Henderson v. Redfern* (1966), 75 Ill.App.2d 196, 200.) The controlling issue, as we see it, is not that relators have failed to show the required interest;[3] it is, in our opinion, whether the application seeks to test the *manner* in which a public body exercises its authorized powers, which it may not do in *quo warranto. People v. City of Paris* (1942), 380 Ill. 503, 509.

■■■ Admittedly, it is difficult to distinguish between acts of a public body exercised without authority (which acts may be challenged in a *quo warranto* action) and acts which, in the exercise of the power, may offend directory provisions of statutes (which acts are not open to question by this extraordinary writ). *City of Paris, supra,* makes the distinction between acts done without the performance of preconditions (of an enabling statute) which are a prerequisite to the power to act, and acts performed—although claimed to be erroneously performed—in the exercise of a power granted after such preconditions have been met.

Under the provisions of Ill. Rev. Stat. 1967, ch. 122, par. 17—16, the school board has the authority under the law to issue tax anticipation warrants when there is "no money in the treasury * * * to defray the necessary expenses of the district * * *." The statute gives the board the broad authority to issue this type of obligation particularly limited so that it is not a direct obligation of the district and is payable only out of the taxes against which it is drawn and at a maximum rate of interest. We do not believe that the determination of the fact that there is "no money in the treasury" was intended to be a precondition to the exercise of the power to issue the warrant. If this were so, each time

---

[3] Nor do we agree with defendant that the case has become moot. Defendant refers to Section 601 of the Federal Tax Reform Act of 1969 as removing the tax exemption on the interest receivable by the purchaser of tax anticipation warrants when the seller of the warrants uses the sales proceeds to invest in securities yielding a high rate of interest. This section does not bar the kind of transaction involved here. It merely makes it less profitable. Since there is a capability of repetition of the challenged conduct, the case is not moot. See *Moore v. Ogilvie* (1969), 89 S.Ct. 1493, 1494.

a board issued warrants, as is commonly done,[4] the board could be put to the burden of defending its decision by an audit of the district's funds when faced with an application for the writ of *quo warranto* charging in general terms, acts without authority. As defendant points out, the mere fact that there might be cash on hand or in the bank does not mean there is money in the treasury, because such cash could be fully earmarked for existing debts. Consequently the considerations which lead to any conclusion of "no money in the treasury" by a school board might be varied. We believe that an administrative determination of fact is intended by Sec. 17—16, reasonably interpreted. This goes to the *manner* in which the school board exercises the power it already possesses under the law.

This conclusion is found even more directly in the statute which empowers public agencies to invest funds. (Ill. Rev. Stat. 1967, ch. 85, par. 901, 902, *supra*). The general authority of the board is limited to the purchase of specified kinds of securities. Investment in only these types of securities is a precondition to defendant's action, and herein this particular precondition has admittedly been met by the investment in government bonds. The final proviso of Section 902, which was made an issue by the relators, provides:

"Provided, however, that only such public funds shall be so invested as, in the judgment of such governing authority, will not be required for expenditure within a period of 90 days from and after the date of the investment thereof and, provided further, that all such securities so purchased shall mature or be redeemable on a date or dates prior to the time when, in the judgment of such governing authority, the public funds so invested will be required for expenditure by such public agency or the governing authority thereof. The expressed judgment of any such governing authority as to the time when any public funds will be required for expenditure or be redeemable is final and conclusive. As amended by act approved July 25, 1963."

We conclude that this proviso is not a precondition to the power to invest, but rather directs the way in which the board is to exercise its existing authority to make investments. The statute expressly recognizes that the judgment, whether the funds invested will be required, involves a broad exercise of discretion which is given to the public body.

---

[4] It is well known that taxes levied for the current year and extended for collection by the respective county clerks are not generally received by the school treasurer until some time after June 1 of the next succeeding year, so that school boards are frequently in need of funds to pay operating expenses pending the receipt of such tax monies.

██ We conclude that the exercise of defendant's discretion in the performance of its authorized powers is not subject to challenge by *quo warranto* and that the application was properly denied.

We, therefore, affirm the judgment below.

Judgment affirmed.

T. MORAN, P. J., and ABRAHAMSON, J., concur.