THE PEOPLE *ex rel.* J. Bert Miller, Petitioner, *vs.* H. E. FULLENWIDER, Respondent.

*Opinion filed February 24, 1928.*

1. QUO WARRANTO—*proceeding must be instituted by Attorney General or State's attorney—discretion.* The proceeding by information in the nature of *quo warranto* cannot be maintained without the consent either of the Attorney General or the State's attorney, and no other person is authorized to present a petition for leave to file an information; and where the proceeding is, in fact, a prosecution by the People, involving no private or individual rights of the relator, the Attorney General or State's attorney has an arbitrary discretion in regard to filing the petition.

2. SAME—*when the State's attorney must file petition for information—mandamus.* Where an individual having a private and personal grievance, for which the proceeding by information in *quo warranto* is the only remedy, presents a proper petition to the State's attorney with evidence of the facts necessary to establish his right, it is the duty of the State's attorney to apply for leave to file an information, and if he refuses he may be compelled to do so by *mandamus.*

3. SAME—*an individual, having only interest of citizen and tax-payer, cannot contest right to office by information.* The general interest which every citizen and tax-payer has in the enforcement of the law and its administration by legally qualified officers is not an interest which will justify the institution of *quo warranto* proceedings by such individual, as relator, to prevent the holding of an office or the exercise of a franchise granted by the State.

4. SAME—*State's attorney cannot refuse to file a petition for an information because it challenges the validity of a statute.* A State's attorney cannot refuse to file a petition for leave to file an information in *quo warranto* because it challenges the validity of a statute and that it would be contrary to his duty to challenge the validity of an act of the legislature, as his oath of office requires him to support the constitution, and if an act violates the constitution he is under no duty to refrain from challenging it and submitting to a court the question of its constitutionality.

5. MANDAMUS—*when State's attorney is not estopped to assert ground of refusal to file information in quo warranto.* In a proceeding for a writ of *mandamus* to compel a State's attorney to present a petition for leave to file an information in *quo warranto*

challenging the right to public office, the State's attorney, because of the fact that he based his refusal, in the first instance, on other grounds, is not estopped to make the objection that the petitioner has no such interest as entitles him to prosecute the information.

ORIGINAL petition for *mandamus.*

J. BERT MILLER, *pro se;* W. H. DYER, and WALTER C. SCHNEIDER, for petitioner.

H. E. FULLENWIDER, State's Attorney, *pro se.*

Mr. JUSTICE DUNN delivered the opinion of the court:

Pursuant to leave granted at the October term, 1927, the relator, J. Bert Miller, filed in this court a petition against H. E. Fullenwider, State's attorney of Sangamon county, for a writ of *mandamus* commanding him to sign and present to the circuit court of Sangamon county a petition for leave to file an information in the nature of *quo warranto* against Len Small, requiring him to show by what warrant he claims to hold and execute the office of Governor of the State of Illinois. The petition for the writ of *mandamus* alleged that the relator is a citizen, resident, property owner and tax-payer in the city and county of Kankakee, and is directly interested in the tax rate to be fixed by the Governor, Auditor and Treasurer of the State upon the taxable property in the State of Illinois to raise the amount of appropriations made by the Fifty-fifth General Assembly, to be expended under the direction and control of the Governor; that Small claims to be Governor and is attempting to perform the duties and is now drawing the salary of that office; that he is ineligible to hold the office because in January, 1925, when he was declared by the canvassing board to have received the highest number of votes for the office and when he took the oath of office and assumed to perform the duties thereof, he was a person who was a holder of public moneys as Treasurer of the State of Illi-

nois in the years 1917 and 1918, and did not while he was such Treasurer, or prior to the time he assumed the duties of the office of Governor, account for and pay over, according to law, all moneys due from him when he retired from the office of State Treasurer in January, 1919; that the People of the State of Illinois, by the Attorney General, filed a bill of complaint against him and others to the January term, 1922, of the circuit court of Sangamon county to compel them to account for and pay over to the State certain public moneys which he had not accounted for or paid over, as required by law, while State Treasurer, and that on December 31, 1924, the court entered a decree in that cause, which is set forth in the affidavit attached to the petition, and finds that Small conspired with Edward C. Curtis and Verne S. Curtis to loan certain funds of the State of Illinois in the hands of Small as Treasurer for the purpose of receiving interest thereon, which was appropriated to the use and benefit of Small, Curtis and Curtis, and that they had not accounted for and paid over such interest to the State; that the decree ordered the defendants to account for such interest, and upon appeal was affirmed by the Supreme Court on December 16, 1925. It is further alleged that when the decree was entered Small had not paid any of the moneys so decreed to be paid to the State of Illinois but was in default therefor and was indebted to the State in the sum of $650,000 or more. The petition further alleges that on September 8, 1927, the petitioner presented to H. E. Fullenwider, State's attorney of Sangamon county, a petition, supported by the petitioner's affidavit, addressed to the circuit court of Sangamon county, praying for leave to file an information in the nature of *quo warranto* against Small; that the State's attorney took the matter under advisement and later refused to sign the petition, giving as a reason for such refusal the amendment to section 1 of the Quo Warranto act passed by the General Assembly and approved June 1, 1927, exempting from

the provisions of that act, among others, the office of Governor, (Laws of 1927, p. 702,) and stating that it was his official duty to uphold and defend all laws of the State as valid until such time as the court should decide otherwise and not in any way to challenge their validity.

The petition presented to the respondent for his signature contained, in substance, the allegations of the petition for the writ of *mandamus* which have been stated, in regard to the exercise of the office of Governor by Small since the month of January, 1925, his previous occupancy of the office of State Treasurer, his failure to account for and pay over, according to law, the money due from him, the bringing of the suit in chancery, and the decree, and that the money so due to the State of Illinois as found by the decree had not been paid to the State prior to Small's taking the oath of office as Governor. The cause has been submitted for decision on a demurrer to the petition.

At common law the writ of *quo warranto* was a prerogative writ used only for the purpose of correcting the public wrongs of usurpation of office or wrongful exercise of franchises or liberties granted by the crown. It was never used as a remedy for private citizens. It was a purely civil remedy, and it gradually fell into disuse and was succeeded by the prosecution by information filed in the court of king's bench by the Attorney General in the nature of *quo warranto,* which was a common law remedy and a criminal method of prosecution in which a judgment against the defendant involved not only ouster from office but also a fine for usurpation of the franchise, which was regarded as a crime. A private citizen could no more prosecute such a proceeding than he could prosecute in his own name for any other crime. The Attorney General had the arbitrary discretion to determine whether he would institute the proceeding or not, and his discretion could not be controlled and was not subject to review. That is still the law of this State in all cases which are of purely public interest and

are, in fact, prosecutions on the part of the people involving no personal or individual right. In such cases the Attorney General is vested with the same discretion originally exercised by the Attorney General at the common law when the writ of *quo warranto* was solely a prerogative remedy of the crown. (*People* v. *Healy,* 230 Ill. 280; *Same* v. *Same,* 231 id. 629; *People* v. *Hanson,* 290 id. 370; *Porter* v. *People,* 182 id. 516; *People* v. *North Chicago Railway Co.* 88 id. 537.) Like the writ of *quo warranto,* the information in the nature of *quo warranto* was used exclusively as a prerogative remedy to punish a usurpation upon the franchises or liberties granted by the crown, and not as a remedy for private citizens as a means of investigating and determining civil rights among themselves. The benefit of the proceeding was extended in England to private persons by the statute of 9 Anne, (chap. 20,) which permitted the proper officer, with the leave of the court, to exhibit an information in the nature of *quo warranto* at the relation of any person desiring to prosecute the same, who was called the relator, against any person usurping or intruding into the offices or franchises in incorporations or boroughs mentioned in the act. That statute, being subsequent to the fourth year of James I, was never adopted in this State. Early in the history of the State, however, a statute was passed to regulate proceedings upon information in the nature of *quo warranto,* which provided that in case any person or persons shall usurp, intrude into or unlawfully hold or execute any office or franchise, it shall be lawful for the Attorney General, or the circuit attorney of the proper circuit with the leave of any circuit court, to exhibit an information in the nature of *quo warranto* at the relation of any person or persons desiring to sue or prosecute the same, who shall be mentioned in such information as the relator or relators, against such person or persons so usurping, intruding into or unlawfully holding or executing any such office or franchise, and to proceed therein in such manner as is usual in

the case of informations in the nature of *quo warranto.*
(Laws of 1833, p. 506.)     This statute has been extended
from time to time so as to apply to officers in private cor-
porations as well as public office and so as to enable many
private rights of individuals to be enforced by means of
the information in the nature of *quo warranto,* but in every
case the proceeding must be instituted by the Attorney Gen-
eral or State's attorney, either of his own accord, or, as
the statute now provides, at the instance of any individual
relator.     It cannot be maintained without the consent of
either the Attorney General or the State's attorney, and no
other person is authorized to present a petition for leave to
file an information.     (*Porter* v. *People, supra; People* v.
*North Chicago Railway Co. supra; Hesing* v. *Attorney
General,* 104 Ill. 292.)     While the Attorney General and
State's attorney have an arbitrary discretion in regard to
filing a petition for leave to file an information in the
nature of *quo warranto* in a case which is, in fact, a pros-
ecution by the people, involving no private or individual
rights of the relators, still, in this State, if an individual
having a private and personal grievance for which the pro-
ceeding is the only remedy shall present a proper petition
to the State's attorney, with evidence of the facts necessary
to establish his right, it is the duty of the State's attorney
to apply for leave to file an information, and if he refuses
he may be compelled by *mandamus* to perform that duty.
(*People* v. *Healy, supra.*)     The question for determination,
then, on this branch of the case is whether the relator has
such private and personal grievance.     The statute refers to
any individual relator, which is equivalent to the language
of the statute of Anne—any person desiring to prosecute.

The Illinois cases which have been cited show that the
general interest which every citizen and tax-payer has in
the enforcement of the law and its administration only by
legally qualified officers, is not an interest which will justify
the presentation of an information by a citizen or tax-payer

as an individual relator. That general interest does not give every citizen and tax-payer the right to institute such proceedings, but a private and personal right is necessary to enable the relator to do so. This rule is in accord with the doctrine generally held by the courts of the States whose legislation on this subject is similar to ours. There is a great variety in the form which such legislation has taken and in the public policy which it expresses. In some the proceeding may be begun only at the request of the Attorney General or State's attorney or other authorized law officer; in some a person claiming the office may institute the suit; in others a person claiming the office or interested therein; in. others a person interested; in others any person whom the court may allow; and in others any person who desires to do so may institute the suit.

In *Newman* v. *United States*, 238 U. S. 537, an act of Congress was considered which provided that a *quo warranto* might be issued by the Supreme Court of the District of Columbia in the name of the United States against a person who usurped, intruded into or unlawfully held or exercised within the district a franchise or public office, civil or military, and permitted the Attorney General or the district attorney to institute such proceedings on his own motion or on the relation of a third person, but provided that such writ should not be issued on the relation of a third person except by leave of the court, and further provided that if the Attorney General and district attorney should refuse to institute such proceeding on the request of a person interested such person might apply to the court for leave to have the writ issued, and if in the opinion of the court the reasons set forth in said petition were sufficient in law, the writ should be allowed to be issued by any attorney in the name of the United States on the relation of the interested person. Newman having been appointed a civil commissioner of the district and the Attorney General and the district attorney having refused to

institute *quo warranto* proceedings to oust him from the office, a citizen and tax-payer of the district applied to the Supreme Court of the district for permission to use the name of the government in *quo warranto* proceedings, alleging that Newman was not eligible to the office because he had not been an actual resident of the district for three years next preceding his nomination, as required by the act of Congress. The court granted the request and the proceeding resulted in a judgment of ouster. The Supreme Court of the United States reversed the judgment, and in discussing the interest which is sufficient to enable a private person to institute *quo warranto* proceedings, said: "Considering the ancient policy of the law and the restrictions imposed by the language of the code, it is evident that in passing this statute Congress used the words 'third person' in the sense of 'any person' and the phrase 'person interested' in the sense in which it so often occurs in the law, prohibiting a judge from presiding in a case in which he is interested, preventing a juror from sitting in a case in which he is interested, and permitting interested persons to institute *quo warranto* proceedings. In the illustrations suggested, the interest which a judge had as a member of the public would not disqualify him from sitting in a case of great public importance and in which the community at large was concerned. The interest which disqualifies a juror from serving, as well as the interest which would authorize this plaintiff to sue, must be some personal and direct interest in the subject of the litigation. The same definition has often been given in *quo warranto* cases. The interest which will justify such a proceeding by a private individual must be more than that of another tax-payer. It must be 'an interest in the office itself and must be peculiar to the applicant.' " Many authorities are cited in support of this conclusion.

The case of *Commonwealth* v. *Cluley,* 56 Pa. 270, was a *quo warranto* proceeding brought at the suggestion of a

private relator against the respondent to answer by what
warrant he exercised the office of sheriff.   The statute pro-
vided that the writ might be issued at the suggestion of
any person or persons desiring to prosecute the same.   The
court, referring to the statute of 9 Anne, gave to these
words the same construction which was given to the English
statute, and held that they meant any person who has an
interest to be affected and did not give a private relator the
right in case of a public right involving no individual griev-
ance.   The relator had been defeated at the election at
which Cluley was a successful candidate.   The attack upon
Cluley's title to the office was based upon his having held
the office of sheriff within three years before the election,
contrary to a constitutional provision.   The court held that
the office would not be given to the defeated candidate even
though the successful candidate were disqualified, and that
he had no such interest as entitled him to be a relator in
the proceeding. .

A similar case is that of *State* v. *Matthews,* 44 W. Va.
372, in which the defeated candidate for sheriff, on leave
granted by the circuit court, filed an information in the
nature of *quo warranto* against the successful candidate on
the ground of his disqualification.   The statute provided
that the Attorney General or prosecuting attorney, at his
own instance or at the request of any person interested,
might apply for leave to file an information in the nature
of *quo warranto.*   The court held that the relator had no
interest as the opposing candidate at the election and no
other interest than that of a citizen and tax-payer, and that
such interest was insufficient to entitle him to file an in-
formation in the nature of *quo warranto.*

The reasons for the rule that in the absence of statutory
authority a private individual cannot maintain an informa-
tion in the nature of *quo warranto* to try the title to a pub-
lic office are stated in *Toncray* v. *Budge,* 14 Idaho, 621, as
follows:   "To allow any and every citizen to commence an

action against any public official to oust him from office at any time he may see fit, whether for private and personal revenge or the public weal, would be most disastrous, dangerous and prejudicial to the public service. In some communities and under certain conditions they might keep a public officer engaged most of the time defending his right to the office instead of discharging the public business."

The proposition that a private citizen having no interest different from that of the public at large is not authorized to prosecute an information in the nature of *quo warranto* to prevent the holding of an office or the exercise of a public right or franchise granted by the State is sustained by the cases of *Butterfield* v. *McCarter,* 98 Pa. 607, *State* v. *Reardon,* 161 Ind. 249, *Meehan* v. *Bachelder,* 73 N. H. 113, *Barnum* v. *Gilman,* 27 Minn. 466, *State* v. *Stein,* 13 Neb. 529, and *Demarest* v. *Wickham,* 63 N. Y. 320.

The petition shows no interest of the relator in the office of Governor other than that of the public at large as a citizen and tax-payer and his interest in the tax rate, in the fixing of which the Governor may participate, and in the expenditure of the appropriations, which the Governor will to some extent direct and control. His interest is not a direct interest in the subject matter of the litigation—the office of Governor—but is only an interest in the official acts which the incumbent of the office may do and his general administration of the office,—and that is the same interest which every other citizen of the State has. The petition does not show a right in relator to prosecute the information.

It is argued on behalf of the petitioner that the respondent is estopped to make the objection that the petitioner has no such interest as gives him the right to prosecute the information as a relator because no such reason was given for his refusal to sign the petition. The reason given by the respondent that it was contrary to his duty to challenge in any way the validity of an act of the legislature was entirely

insufficient.  His oath of office requires him to support the constitution of the State, and if an act of the legislature violates that constitution he is under no duty to refrain from challenging it and submitting to a court the question of its constitutionality.  An estoppel arises when a person does some act which will prevent him from averring anything to the contrary.  It has no application to this case.  The petitioner must show an interest peculiar to himself, distinct from the public interest; and without regard to the reasons, good or bad, which the respondent may have given for his refusal to act, if the petitioner has not shown such interest the court cannot say that he has shown the clear right which the law requires him to show to entitle him to the writ of *mandamus*.

The demurrer will be sustained and the petition dismissed.

*Petition dismissed.*