(No. 32199.—

THE PEOPLE OF THE STATE OF ILLINOIS, *vs.* J. HOWARD WOOD *et al.*, Appellees.—(DEERFIELD-SHIELDS TOWNSHIP HIGH SCHOOL DISTRICT No. 113, Appellant.)

*Opinion filed March 20, 1952.*

SCHAEFER, J., took no part.

DAVID LEVINSON, ROBERT S. CUSHMAN, and ROBERT I. LOGAN, all of Chicago, for appellant.

ROY A. WHITESIDE, and JOSEPH B. FLEMING, both of Chicago, and SIDNEY H. BLOCK, of Waukegan, for appellees.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

This appeal brings before us a *quo warranto* action which was commenced in the circuit court of Lake County to test the legality of the detachment of certain territory from Deerfield-Shields Township High School District No. 113, and the legal sufficiency of Community High School District No. 115 into which the detached territory was organized. The action was brought in the name of the People of the State of Illinois as the voluntary act of the State's Attorney of Lake County, and the defendants named were the individual members of the board of education of District No. 115. After a hearing, the circuit court entered a judgment in favor of the defendants, find-

ing that District No. 115 was legally organized and that the individual board members were validly elected and entitled to hold their respective offices.

The only plaintiff, the People of the State of Illinois, did not appeal from the judgment, the State's Attorney, who brought and controlled the action, electing to abide by the judgment. However, Deerfield-Shields Township High School District No. 113, from which the territory comprising District No. 115 was detached, filed a notice of appeal and is the only appellant in this court, although heretofore not a nominal party to the action. Appellees have filed a motion in this court to dismiss the appeal, contending that District No. 113 is not a proper appellant. It is urged that only the People, through the Attorney General or State's Attorney, can appeal an adverse decision in a *quo warranto* action involving solely public, as opposed to personal and private, rights and interests. The motion has been taken with the case and commands our first consideration.

Appellant suggests that, although not a party to the original proceeding, it is a proper appellant and is insured a review of the decision under the theory that it is a nonparty which has been adversely affected by the decision and would be benefited by its reversal, regardless of the fact that this is a *quo warranto* proceeding involving only public rather than private interests. Relying upon the language used in section 7 of the Quo Warranto Act, (Ill. Rev. Stat. 1951, chap. 112, par. 15,) and that contained in the last sentence of section 81 of the Civil Practice Act, (Ill. Rev. Stat. 1951, chap. 110, par. 205,) appellant urges that it is entitled to a review of the judgment by filing a notice of appeal under present practice because under prior practice in such cases, it could have obtained a review by writ of error. Appellees maintain, however, that appellant would not have had such a right under prior practice in a *quo warranto* proceeding involving like parties and like

interests, for the reason that only the People are entitled to a review in such case, due to the very nature of a *quo warranto* proceeding involving matters of general public import, and for the further reason that the interests of an entity such as appellant would not cause it to be directly affected by a judgment adverse to the People or directly benefited by a reversal thereof.

Immediately prior to the enactment of the Civil Practice Act, the manner of review in *quo warranto* proceedings was set forth in section 7 of the Quo Warranto Act as follows: "Appeals and writs of error may be taken and prosecuted in the same manner and upon the same terms, and with like effect as in other civil cases." (Ill. Rev. Stat. 1933, chap. 112, par. 7.) Under the statute presently in force the same section reads: "The provisions of the Civil Practice Act, including the provisions for appeal, and all existing and future amendments of said Act and modification thereof, and the rules now or hereafter adopted pursuant to said Act, shall apply to all proceedings hereunder, except as otherwise provided in this Act." (Ill. Rev. Stat. 1951, chap. 112, par. 15.) The last sentence of section 81 of the Civil Practice Act, (Ill. Rev. Stat. 1951, chap. 110, par. 205,) makes the following provision: "The right heretofore possessed by any person not a party to the record to review a judgment or decree by writ of error shall be preserved by notice of appeal." It thus appears that in a *quo warranto* proceeding, prior to our Civil Practice Act, a writ of error was an appropriate means of gaining a review in a proper case and that section 81 now applies to *quo warranto* proceedings so as to make review possible by appeal whenever a writ of error would have been proper before. Consequently, the basic issue presented by the motion to dismiss is whether appellant would have had the right to prosecute a writ of error in an identical *quo warranto* action prior to the advent of the Civil Practice Act.

In approaching the problem, some repetition of the fundamental characteristics of *quo warranto,* of its origin and development, becomes necessary. These factors were ably described in *Rowan* v. *City of Shawneetown,* 378 Ill. 289, as follows:

"The ancient common law writ of *quo warranto* was an original writ issuing out of chancery in the nature of a writ of right for the king against one who claimed or usurped any office, franchise or liberty, to inquire by what authority he asserted a right thereto in order that it might be determined. (*Ames* v. *Kansas,* 111 U.S. 449, 4 Sup. Ct. 437, 28 U.S. (L. ed.) 482; *Rex* v. *Marsden,* 3 Burr, 1817.) It was an exclusive prerogative of and could be availed of only by the Crown for the purpose of correcting public wrongs. It was never available for the correction of the private wrongs of the individual. This purely civil writ became obsolete at an early date, due partly to the complicated and cumbersome nature of the proceeding, and it was supplanted by the information in the nature of *quo warranto,* which was properly a criminal prosecution instituted by the Attorney General to fine the usurper and to oust him from the office or franchise. (3 Blackstone's Com. 263.) The information, as any other criminal action, was under the exclusive and arbitrary control of the Attorney General. His discretion could not be coerced and leave of court to file the information was not required. A private citizen could no more prosecute such a proceeding than he could prosecute in his own name for any other crime.

"Early in the history of this State a statute was passed to regulate proceedings upon information in the nature of *quo warranto* (Laws of 1833, page 506,) and by subsequent enactments the uses and purposes of *quo warranto* were extended to the correction of certain wrongs done to the private rights of individuals. Section 1 of the Quo Warranto act of 1874, and subsequent amendments thereto, abrogated the common law rule and provided that an in-

formation for *quo warranto* could not be filed for the correction of wrongs done to either public or private rights except by leave of court on a showing of probable cause. Section 2 of the act of 1937 has changed the proceeding and now the Attorney General or the State's Attorney may file a complaint in *quo warranto* without obtaining leave of court.

"A proceeding in *quo warranto* prosecuted by such public official is now as it was at common law. Under the section of the statute referred to, however, a fundamental distinction exists between a *quo warranto* proceeding brought to protect purely public interests involving no personal or individual rights differing from those of the general public, and a proceeding brought on the relation of an individual citizen to enforce a private right in which the citizen has a purely individual and substantial interest, differing from the general public, and in which the interest or concern of the State may be small or entirely theoretical. At common law the Attorney General, and, under the Quo Warranto act of 1937, the Attorney General or the State's Attorney of the proper county, have an absolute, arbitrary discretion to determine whether they will institute *quo warranto* proceedings or not, in all cases which are of purely public interest. No leave of court is necessary, and the discretion vested in the State's prosecuting officers can not be controlled, coerced, or reviewed by the individual citizen. *People* v. *Fullenwider,* 329 Ill. 65; *People* v. *Hanson,* 290 id. 370; *People* v. *Healy,* 231 id. 629; *Porter* v. *People,* 182 id. 516; *People* v. *North Chicago Railway Co.* 88 id. 537.

"These officers have no such arbitrary authority where the proceeding is to enforce individual rights. Under the Quo Warranto act in force prior to 1937, where the individual citizen had a private and personal right, differing from that of the general public, to enforce which *quo warranto* was the only remedy, he could apply to the State's

attorney with a petition showing facts necessary to establish his interest, and on such showing it then became the duty of that official to institute *quo warranto* proceedings, and if he refused to do so, he could be compelled by *mandamus* to perform that duty. (*People* v. *Healy, supra.*) Under that statute it became well settled that the interest which the individual relator must have in the question to support a *quo warranto* proceeding and one in which he could *mandamus* the State's attorney to institute *quo warranto* proceedings in his behalf, should be personal and peculiar to him, and not one shared in common by other members of the general public. The interest which an individual has as a taxpayer or as a member of the general public was held not to be sufficient. *People* v. *Fullenwider, supra; Newman* v. *United States,* 238 U.S. 537.

"Under the present Quo Warranto act, in cases where individual rights are involved and the Attorney General and State's attorney refuse the request of the individual to bring a *quo warranto* action, such individual does not have to *mandamus* that official to compel the filing of the action, but he may file a complaint on his own relation, provided he first obtains leave of court. The interest which the statute requires the individual to possess to authorize the granting of leave to file must be one that is personal to him and one that is not common to the public. The purpose and intent of the new statute was to make it possible for the individual who had been wronged in his private rights to have the writ on his own relation, and thus avoid the necessity of his resorting to a *mandamus* action against the Attorney General or State's attorney as was required under the prior act. The statute was not intended to place in the hands of the individual the right to a writ of *quo warranto* to correct a wrong common to the public. It follows that one who has no interest except that which is common to every other member of the public is not entitled to use the name of the government in *quo warranto*

proceedings. The individual interest as a taxpayer, resident, or citizen was not a sufficient showing as to interest under the former act (*People* v. *Fullenwider, supra; Newman* v. *United States, supra,*) and for the same reasons such interest does not meet the requirements of the act of 1937."

From the foregoing, it may be observed that the changes wrought in the original writ of *quo warranto* by various statutes have been directed mainly to giving individuals, who have distinct interests not common to the public, the opportunity to pursue the remedy of *quo warranto* in order to establish and protect such personal rights. (*People ex rel. Miller* v. *Fullenwider,* 329 Ill. 65; *Adair* v. *Williams,* 407 Ill. 309.) However, where matters of purely public import touching no private interest are involved, the substantive requirements and limitations of the writ of *quo warranto* as known to the common law have been largely preserved in our statutory information in the nature of a *quo warranto.* (*People ex rel. Barrett* v. *Gentile Cooperative Ass'n,* 392 Ill. 393; *Adair* v. *Williams,* 407 Ill. 309.) The distinction which presently exists between a *quo warranto* proceeding to protect purely public interests and one brought to enforce and protect a private right belonging to an individual citizen has generated some confusion. Some argument has been advanced that the statutory concessions made to individuals in order to protect private rights should be interpreted as changing the rule which gives to the People alone, speaking through the Attorney General or State's Attorney, the exclusive prerogative to prosecute and control *quo warranto* proceedings concerning public interests involving no personal and private rights differing from those of the general public. We have, however, adhered to the established doctrine.

Where the proceeding is in fact a prosecution by the People inquiring solely into matters which, from a legal point of view, concern only the general public, we have

repeatedly held that the Attorney General or State's Attorney has a complete, arbitrary and unfettered discretion as to whether a *quo warranto* proceeding should be instituted. (*People ex rel. Miller* v. *Fullenwider,* 329 Ill. 65.) The same officers have an absolute right to initiate *quo warranto* in such cases without obtaining leave of court, whether the action be brought on their own accord or on the relation of others. (*People ex rel. Buchanan* v. *Mulberry Grove Community High School Dist.* 390 Ill. 341; *Rowan* v. *City of Shawneetown,* 378 Ill. 289.) The *Mulberry Grove case* also holds that where only the interests of the People are involved, the Attorney General or State's Attorney alone completely controls the determination of whether an adverse decision shall be appealed, persons on whose relation the *quo warranto* may have been filed having no right to appeal. An individual with no interest distinct from that of the public has no right to either institute or carry on *quo warranto* proceedings. (*People* v. *Kidd,* 398 Ill. 405.) In like manner, a person who is unable to require the court to grant him leave to file a *quo warranto* proceeding on his own relation for failure to show a private interest not common to the general public, has no right or power to initiate, to control or to appeal in *quo warranto. Adair* v. *Williams,* 407 Ill. 309.

No private interests are claimed or involved here. As stated, the *quo warranto* proceeding was filed as the voluntary act of the State's Attorney to test the legality of the detachment of territory from the appellant school district and its formation into a new district. A school district is a *quasi*-municipal corporation or a minor subdivision of the State created to act as an administrative arm to carry out the establishment of free schools. (*Leviton* v. *Board of Education,* 374 Ill. 594.) The creation, division, and abolishment of school districts are controlled by and subject solely to the will of the legislature. That an inquiry of the nature presented by the *quo warranto* action in this

case involves matters purely public in nature, and is of concern only to the People in a legal dispute, has been firmly established by past decisions of this court. In *Chesshire* v. *People ex rel. Harper,* 116 Ill. 493, and again in *People* v. *Kidd,* 398 Ill. 405, it was held that a *quo warranto* proceeding to test the legal existence of a school district concerns, in a legal point of view, the public alone, and it is wholly immaterial whether the State's Attorney prosecutes the same of his own accord or at the insistence of any individual relator. The opinion in *People ex rel. Buchanan* v. *Mulberry Grove Community High School Dist.* 390 Ill. 341, reached a like result when it stated: "The interest which the individual relators have in the questions of the usurpation of the powers of a school district and the usurpation of a public office, is not personal and peculiar to them, but is one which is shared in common by other members of the general public."

At common law it was solely the prerogative of the Crown, and only through the Attorney General, to complain of public wrongs, and the Crown addressed itself to certain wrongs of a civil nature through the writ of *quo warranto.* In principle, the same is true under our system of government. The exclusive responsibility for seeking redress and correction of public wrongs, civil and criminal, is vested in the Attorney General or the State's Attorney of the proper county, who proceed in the name of the People. These officers alone, without the joinder of other officers or *quasi-*municipal corporations of the State, can bring *quo warranto* or other appropriate actions when solely public rights and interests are in issue.

Since the right to represent and act for the People has been inherently and legally vested exclusively in others, appellant cannot qualify as a proper party to such review in this action under any theory that it represents and acts for the People. Such fact notwithstanding, appellant claims to be entitled to review the decision as a matter of right,

on the single ground that the statutory appeal afforded by our present Quo Warranto Act embraces the review given under the former practice by writ of error. It is true that reviews formerly possible by writ of error may now be obtained by appeal. (*Gibbons* v. *Cannaven,* 393 Ill. 376; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.) Likewise, it is true that a writ of error provided a means of review under our former practice to nonparties who could show that they were directly injured by the judgment, that they would be benefited by a reversal or that they would be competent to release errors. *People ex rel. Pollastrini* v. *Whealan,* 353 Ill. 500.

Even though it may appear, in the present case, that appellant has an interest which, in a certain sense, is not common to every other member of the public, we still cannot, in the light of past decisions, construe such interest to be a private and personal right or interest which can be truly disassociated from the interest and concern of the general public and of the State in the school districts affected by this proceeding. Where only such interests are involved, the State alone has the exclusive prerogative to use *quo warranto* to inquire into the matters involving the interest. Only by turning our backs on the fundamentals inherent in *quo warranto,* or by overlooking them as unimportant and outmoded technicalities, could we justify the granting of appellant's demand for a review in this action as a matter of right. We concede that decisions should turn on practical rather than purely technical considerations. However, that which at first appears to be purely an unsubstantial technicality often, on closer scrutiny, is found to be actually bottomed on very practical considerations which are directed toward orderliness and convenience in carrying on the affairs of men and their government. This is especially true in the field of law where principles and procedures presently adhered to had their origin many years ago. While there is some tendency to look upon old

principles and procedures as connoting their only value and right to existence within themselves, they may actually only be explained and evalued in the light of present needs by looking to the considerations which justified their establishment and application at their inception.

The rules and limitations of *quo warranto,* which preclude appellant's right to review, are well justified when it is considered that the vesting of the power to institute, dismiss or appeal a *quo warranto* proceeding in the Attorney General or State's Attorney, where purely public rights are concerned, avoids the confusion and conflict which would occur if others could interfere at some stage of the proceeding, or if concurrent control of the *quo warranto* remedy was to vest in other hands. Rules and principles evolved for, and having the effect of avoiding conflicts and in eliminating possible disputes between State officers and State entities in *quo warranto* actions, are founded upon practical considerations which should not be lightly overturned.

Appellant cites *Winne* v. *People ex rel. Hess,* 177 Ill. 268, and *People ex rel. Pollastrini* v. *Whealan,* 353 Ill. 500, as cases in which a nonparty municipal corporation and a *quasi*-municipal corporation were held to have interests which were adversely affected by the decision of the lower court and which would be benefited by a reversal, thus giving them the right to seek review as nonparties. *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236, is also relied upon heavily by appellant in its brief. Though the cases relied upon involved a *mandamus* proceeding, as distinguished from *quo warranto,* appellant argues that they establish the right of a *quasi*-corporation to become a nonparty appellant in a *quo warranto* proceeding. With this we cannot agree. *Mandamus* and *quo warranto* are basically different both in substance and procedure. In the three cases cited, this court was not confronted by the problem of distinguishing between private rights and general public interests which

is essential in *quo warranto,* and we do not interpret those cases as sustaining appellant's contention.

Even though review by appeal now embraces the writ of error, or writ of right, formerly afforded in a proper case to persons not a party to the action, we find no authority or justification for holding that a *quo warranto* proceeding is such a proper case, or that appellant here is entitled to make this appeal as a matter of right. To permit the appeal because of a zealousness to insure review would be to let the right of appeal transcend the action sought to be reviewed at the cost of altering the provident substance and procedure of the action itself. It is not the office of the court to allow the established substance and procedure of actions at law to be abrogated by judicial decision merely to afford the right to appeal.

Inasmuch as appellant is without authority or interest to prosecute an appeal in this proceeding, the motion to dismiss is allowed and the appeal dismissed.

*Appeal dismissed.*

Mr. JUSTICE SCHAEFER took no part in the consideration or decision of this case.