THE PEOPLE *ex rel.* FREEPORT FIRE PROTECTION DISTRICT *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF FREEPORT, Defendant-Appellee.

Second District    No. 79-859

Opinion filed November 12, 1980.

John A. Leemon, of Mt. Carroll, for appellants.

John G. Garrity, Corporation Counsel, of Freeport, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal by the Freeport Fire Protection District and the town of Silver Creek from the judgment of the circuit court of Stephenson County which held that neither plaintiff had standing to bring a *quo warranto* action against the city of Freeport questioning its annexation of certain property within the fire-protection district.

The property annexed by the city of Freeport is contiguous to it, and neither plaintiff alleges that the annexation would render the remainder of the fire-protection district's territory noncontiguous or would impair its ability to serve the remainder of its territory. The Attorney General and the State's Attorney of Stephenson County both declined to apply for a writ of *quo warranto* to question the city's annexation of the territory in question, whereupon the plaintiffs applied directly to the circuit court asking it to issue the writ. The city objected that the plaintiffs had no standing to apply directly for a writ of *quo warranto*. The trial court, after a hearing, held that the plaintiffs did not have standing to bring a *quo warranto* action and denied their petition.

Originally the writ of *quo warranto* was a high prerogative writ which could only be granted by application to the crown. (See 65 Am. Jur. 2d *Quo Warranto* §2, at 230 (1972).) Under the common law in this country, only the Attorney General or the State's Attorney, as representatives of the people, could apply to the court for a writ of *quo warranto*.

While originally a criminal proceeding, it has gradually become civil in form and is now governed by the rules of the Civil Practice Act. However, its purpose is the same as in ancient times—to inquire by what right or authority a certain office is held, an act performed or, as in this case, to test the legality of an act or proceeding. (See *Rowan v. City of Shawneetown* (1941), 378 Ill. 289, for a discussion of the background and development of the writ of *quo warranto*.) In time, the law of *quo warranto* evolved to the point where a private person having an interest in the subject matter could apply to the Attorney General or to the State's Attorney for issuance of the writ on his behalf, and if the petition he presented was in proper form and supported by sufficient affidavits, those authorities were supposed to apply to the court to issue the writ. If they refused to do so they could be required by *mandamus* to so apply. See *People ex rel. Miller v. Fullenwider* (1928), 329 Ill. 65.

In 1937, the Illinois legislature by the Quo Warranto Act (Ill. Rev. Stat. 1937, ch. 112, pars. 9-18) provided that where the public authorities refused, after having been requested to apply for a writ of *quo warranto*, an individual having a private interest at stake could apply directly to the court for issuance of the writ after notice to the Attorney General and the State's Attorney and the adverse party of his intention to do so. In *People ex rel. McCarthy v. Firek* (1955), 5 Ill. 2d 317, it was held that a private individual could apply for a writ of *quo warranto* under his right as a taxpayer.

However, while the law has evolved to a more liberal treatment of the right of the individual who has a purely private interest, there has never been any alteration in the concept of *quo warranto* as applied to a matter of public interest or governmental function. In such cases it has been consistently held that only the Attorney General or the State's Attorney, as representatives of the people, have standing to apply for a writ of *quo warranto*. In matters of purely public interest or concern the discretion of these public officials is absolute as to whether they shall ask the court to issue the writ. See *People v. Wood* (1952), 411 Ill. 514.

The plaintiffs in this case allege that the annexation of the territory in question by the city will reduce their revenues and that as municipal corporations depending on such revenues, they have an interest, the same as a private citizen, which allows them to apply directly to the court in case the Attorney General and the State's Attorney have refused to do so.

The city of Freeport argues that a fire-protection district or a township are purely public bodies performing public governmental functions and can have no concerns or interests that are private since they only exist to perform a public service. Therefore, the city says, the plaintiffs are required to apply to the representatives of the people—the Attorney

General or the State's Attorney—rather than directly to the court for the writ. Thus, they are bound by the refusal of the public authorities if the authorities refuse to act.

The Fire Protection District Act (Ill. Rev. Stat. 1977, ch. 127½, par. 38.3) states that:

> "Any territory within a fire protection district that is or has been annexed to a city, village or incorporated town * * * is, by operation of law, disconnected from the fire protection district as of the January first after such territory, is annexed * * *."

However, it is provided in the Act that such disconnection by operation of law does not occur:

> "[I]f, within 60 days after such annexation * * * the fire protection district files with the appropriate court a petition alleging that such disconnection will cause the territory remaining in the district to be noncontiguous or that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district."

The plaintiffs do not make any allegations as to noncontiguity, nor do they allege that the loss of revenue consequent upon the disconnection of the territory in question would impair the fire-protection district's ability to serve its remaining territory. The city contends that section 20 of the Fire Protection District Act (Ill. Rev. Stat. 1977, ch. 127½, par. 38.3) is a special Act passed for the protection of fire-protection districts and the legislature intended thereby to limit the remedy against disconnection to the grounds stated in the Act. Thus, the city says, the fire-protection district has no remedy by way of *quo warranto*.

We are inclined to agree. We see no private interest in the fire-protection district or the township which was damaged by the annexation in question. The possible noncontiguity or loss of adequate revenue to operate effectively is clearly a public consideration, involving the public functions of the district, that is, its fire-fighting ability. These are the considerations—obviously public considerations—which the legislature was concerned with and which the quoted section of the Act is intended to ameliorate. We think it is logical to suppose that the legislature, in providing this relief for fire-protection districts, clearly indicated the public concerns present in the problem and limited the remedy. It is possible, of course, for a situation to involve both public and private interests, but we do not consider this situation to be one of those.

It has been suggested that the case of *People ex rel. City of Des Plaines v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 807, might have a bearing on the case before us. In that case Des Plaines annexed certain property and later Mount Prospect annexed the same property.

Des Plaines then sought a writ of *quo warranto* against Mount Prospect asking that Mount Prospect show by what authority it purported to exercise authority over the territory in question. The circuit court issued the writ, and the case was tried on the complaint in *quo warranto*. It has been suggested that there is an analogy between this case and the *Des Plaines* case, that is, if one municipality can sue another municipality in *quo warranto* why cannot a fire-protection district—also a municipal corporation—do likewise? However, we see a vast difference between two municipalities contending for dominion over the same territory and the objection of a fire-protection district to certain territory being disconnected from it by a separate municipality. The fire-protection district has only one function—the public one of fighting fires. A municipality, such as Des Plaines or Mount Prospect, on the other hand, exercises both governmental and proprietary functions—they are concerned with both private or proprietary interests and public or governmental ones, either of which might be threatened by the annexation of territory it was exercising dominion over. But the real distinction between the *Des Plaines* case and that before us is that so far as the case discloses, Mount Prospect never objected to the filing of the *quo warranto* suit, and the question of the right of Des Plaines to do so does not appear to have arisen. Instead, Mount Prospect attacked the annexation ordinance of Des Plaines as being void due to the failure to include the far side of certain adjacent highways within the description of the lands annexed by Des Plaines. The case thereafter was tried on other issues, disregarding the question of the right to a writ of *quo warranto*. Since the question raised here was not tried in that case, the *Des Plaines* case does not seem very helpful.

We are not inclined to view the allegation—even if proved—that the fire-protection district will lose some revenue by the disconnection—as being sufficient to establish a private interest in the district and to allow it to file a petition for a writ of *quo warranto* directly with the court, overriding the public authorities. The function of the district appears to be purely a public one.

The judgment of the circuit court of Stephenson County is affirmed.

Judgment affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.