2021 IL App (2d) 210064-U
No. 2-21-0064
Order filed December 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ED FIALA, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Nos. 10-L-223, |
| | ) | 13-L-285 |
| | ) | |
| PATRICK M. GRIFFIN, JERRY BOOSE, | ) | |
| KENNETH BLOOD, FOX MILL LIMITED | ) | |
| PARTNERSHIP, B&B ENTERPRISES, | ) | |
| HUDSON HARRISON & K. HOVNANIAN | ) | |
| AT NORTON LAKES, LLC, | ) | Honorable |
| | ) | Mark A. Pheanis, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court properly granted summary judgment in favor of developer defendant on issue of law regarding whether sanitary district could validly reenact annexation ordinance pursuant to settlement agreement; however, the court erred in dismissing complaint against additional defendants for failure to state a claim, as complaint sounded in a claim for declaratory judgment and not a *quo warranto* challenge to annexation ordinance.

¶ 2  Plaintiff, Ed Fiala, appeals the dismissal of his sixth amended complaint against

defendants, Patrick Griffin, Jerry Boose, Kenneth Blood, Fox Mill Limited Partnership (FMLP),

and B&B Enterprises. Fiala also appeals from a grant of summary judgment in favor of defendant Hudson Harrison. For the reasons that follow, we affirm in part, reverse in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4     This appeal is the newest in a series of long-running disputes involving the Wasco Sanitary District, several real estate developers, and homeowners in the Village of Campton Hills (as well as the parties' various attorneys). See, *e.g.*, *Wasco Sanitary District v. Fox Mill Limited Partnership*, 2021 IL App (2d) 200650-U; *Wasco Sanitary District v. Brizuela*, 2018 IL App (2d) 170957-U; *Fiala v. Wasco Sanitary District*, 2018 IL App (2d) 170556-U; *Fiala v. Harrison*, 2016 IL App (2d) 150842-U; *Fiala v. Wasco Sanitary District*, 2014 IL App (2d) 130253-U.

¶ 5     The relevant facts can be stated briefly and are familiar to all parties. In 1994 the District entered into an annexation agreement to provide water and wastewater treatment services for FMLP's residential development, a subdivision called Fox Mill. The agreement called for the developers to fund the construction of the subdivision's water and sewer facilities. In return, the District assigned to the developers the right to collect for the connection permits to the newly constructed water and sewer facilities. Accordingly, those seeking access to the newly constructed water and sewer facilities were instructed by the District to pay the developers for their connection permits. The agreement also provided that FMLP could sell the District's excess capacity provided that the excess was created by FMLP's improvements. Since 2009, Fox Mill homeowner Ed Fiala has been litigating his claims that this arrangement was an unlawful conspiracy, in violation of the public trust doctrine, in state and federal court.

¶ 6     Returning to the matter at hand, the 1994 Agreement was amended in 1996, 1997, and 1999, and those amendments addressed FMLP's obligations for the construction of additional

infrastructure to support the District's water and sewer facilities for newly developed residential subdivisions.

¶ 7    In 2001, the District and FMLP entered into the fourth amendment (2001 Amendment) to the 1994 Agreement. A recital to the 2001 Amendment stated that it had "become evident" that the wastewater facilities constructed by FMLP "may have the capacity to service more than 785 single-family residential units" or their equivalent. The 2001 Amendment provided that, if the Illinois Environmental Protection Agency (IEPA) reassessed the District's capacity and issued additional connection permits not contemplated by the 1994 Agreement, such permits would "inure to the benefit" of FMLP.

¶ 8    In 2004, the District and FMLP entered into a "Construction and Reimbursement Agreement" pertaining to the development of two new subdivisions: Prairie Lakes and Fox Creek. Then, in 2007, FMLP assigned its rights to "wastewater capacity" under the 1994 Agreement to defendant, B&B Enterprises. Defendants, Jerry Boose and Kenneth Blood, are the co-owners of FMLP and B&B Enterprises. Finally, in 2008, the District entered into an annexation agreement (Norton Lakes Agreement) with FMLP and defendant, Hudson Harrison, for the development of a parcel known as Norton Lakes. As part of the Norton Lakes Agreement, FMLP agreed to release the District from its "reimbursement" obligations under the Construction and Reimbursement Agreement, and Harrison agreed to procure an assignment of a portion of FMLP's "current wastewater and water capacity." Harrison then entered a separate agreement with B&B Enterprises, wherein Harrison agreed to pay B&B Enterprises $2,650,000 for the "amount of wastewater capacity" necessary to service the proposed 106 single-family lots within the Norton Lakes development. This amount was based on a purchase price of $25,000 per lot. Upon the

satisfaction of all necessary obligations, the Norton Lakes Agreement called for Harrison to "receive" water and wastewater connection permits for 106 residential dwellings. (Harrison also conveyed ownership of several lots, including their connection permits, to another developer, K. Hovnanian at Norton Lake, LLC. We refer to both parties simply as Harrison.)

¶ 9    As noted, beginning in 2009, Fiala has challenged these arrangements in multiple iterations of his federal and state complaints. Generally, Fiala has maintained that the disputed connection permits were public property and it was therefore unlawful for the District to assign them to the Fox Mill developers. Moreover, according to Fiala, the District's trustees failed to disclose that they were benefitting from the sale of the permits through their personal and familial connections to FMLP and B&B Enterprises. With respect to Harrison, Fiala alleged that the 2008 Norton Lakes Agreement was "void *ab initio*" because each of the District's three trustees who voted on it had financial connections with FMLP, B&B Enterprises, Boose, and Blood.

¶ 10    In response to Fiala's complaint, the District sued Harrison for indemnification under the 2008 Norton Lakes Agreement (*Wasco Sanitary District v. Harrison*, No. 10-MR-526 (Cir. Ct. Kane County), and Norton Lakes Development, LLC, sued the District seeking execution of the plat of subdivision (*Norton Lakes Development, LLC v. Wasco Sanitary District*, No. 11-MR-92 (Cir. Ct. Kane County). The two suits were consolidated before the Honorable David Akemann and the parties entered into a 13-page consent decree whereby the District executed the plat for the subdivision, Harrison made a settlement indemnification payment, and the parties "reaffirm[ed] the provisions of the [Norton Lakes] Agreement and their respective obligations and covenants thereunder."

¶ 11    Meanwhile, with respect to the Fiala litigation, we reversed the dismissal of Fiala's third

amended state-court complaint against both the District and Harrison (*Fiala v. Wasco Sanitary District*, 2014 IL App (2d) 130253-U (*Fiala I*); *Fiala v. Harrison*, 2016 IL App (2d) 150842-U (*Fiala II*)). In our most recent disposition, *Fiala v. Wasco Sanitary District*, 2018 IL App (2d) 170556-U (*Fiala III*), we held that the District's assignment of connection permits to FMLP did *not* violate key provisions of the Sanitary District Act of 1936 (Sanitary District Act) (70 ILCS 2805/8, 8.1 (West 1998)), which were enacted specifically to induce private developers to finance the construction and maintenance of sanitary systems for local sanitary districts in exchange for the right to receive payments for the connection permits. *Fiala III*, 2018 IL App (2d) 170556-U, ¶¶ 32-47. We also affirmed the dismissal of several counts in Fiala's fifth amended complaint, including his claims for fraud and civil conspiracy. However, we reversed the dismissal of other counts in which Fiala sought an accounting based on alleged violations of the public trust doctrine and the trustees' statutorily barred conflicts of interest. The supreme court denied all parties' respective petitions for leave to appeal. See *Fiala v. Wasco Sanitary Dist.*, 2018 IL App (2d) 170556-U, *appeal denied*, Nos. 124067, 124068, 124071 (Nov. 28, 2018).

¶ 12   As the issue of *quo warranto* relief has arisen again, we note that in our prior decision, we briefly addressed the matter in response to the parties' arguments. *Fiala III,* 2018 IL App (2d) 170556-U, ¶¶ 72-73. As our earlier comments have been misconstrued, we will set them forth fully below.

¶ 13   That brings us to the matter at hand following *Fiala III*. On remand, the circuit court granted Fiala leave to file his sixth amended complaint. Count I sought declaratory relief under the public trust doctrine, the Sanitary District Act (70 ILCS 2805/1 *et seq*. (West 2018)), and the Public Officer Prohibited Activities Act (50 ILCS 105/1 *et seq*. (West 2018)), to invalidate 28 of

the District's annexation and capacity agreements (and amendments thereto). Count II made the same allegations and sought to unwind all sales or transfers of District funds and resources in possession of B&B and FMLP. Count III sought declaratory relief against the former trustees under Public Officer Prohibited Activities Act, particularly for the recovery of all District funds in possession of other entities—a purported $12 million, including at least $2 million spent on the District's radium treatment plant. Count IV sought the same, but on the basis of the Sanitary District Act, while Count V sought an accounting.

¶ 14    Defendants Griffin, Boose, Blood, FMLP, and B&B (collectively, the B&B defendants) filed a motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure. In the motion, these defendants alleged that, purportedly following our statements in *Fiala III*, a claim for *quo warranto* relief was Fiala's *exclusive* means to challenge the 1994 Annexation Agreement, and any subsequent agreement thereafter. Accordingly, as there is a one-year statute of limitations for *quo warranto* claims under the Municipal Code (65 ILCS 5/7-1-46 (West 2018)), and a three-year statute of limitations under the Code of Civil Procedure (735 ILCS 5/18-104 (West 2018)), defendants asserted that Fiala's complaint was decades too late.

¶ 15    Meanwhile, Harrison, the developer of the Norton Lakes properties, filed a motion for summary judgment. In his motion, Harrison alleged that Fiala's challenge to the 2008 annexation agreement was rendered irrelevant by the 2014 settlement agreement between Harrison and the District. In other words, Harrison contended that any defect inherent in the passage of the 2008 Norton Lakes Agreement by the District's (allegedly) corrupt trustees was cured by the 2014 settlement agreement, which was ratified by a different board. Fiala, too, filed a cross-motion for partial summary judgment asserting that the 2008 Agreement was "void *ab initio*" and could not

be lawfully considered or ratified by a later board.

¶ 16    In a 10-page, single-spaced memorandum opinion, the circuit court granted summary judgment in favor of Harrison (and against Fiala) and granted the B&B defendants' motion to dismiss. With respect to summary judgment, the circuit court noted that Fiala had only cited boilerplate regarding "void[ness]"; he did not "cite[ ] any cases which hold that a governmental contract rendered void due to a procedural defect cannot be reaffirmed once the defect is removed." The circuit court submitted that a failure of notice or a conflict by a key voting member was a curable defect, which "makes sense" by way of example:

> "If a school board votes to accept a proffered teacher contract, but fails to follow proper notice provisions, the contract is void. This clearly does not prohibit the board from sending the proper notice and voting again on the same contract. Similarly, if [the] Department of Health contracts with the developer of a game-changing vaccine and purchases a large quantity [of it] only to find that a member of its voting board had a conflict, it would be ridiculous to suggest that the board could never purchase [the] vaccine ever again even if the board member was removed."

¶ 17    Turning to the B&B defendants' motion to dismiss, the circuit court surveyed several cases—including our decision in *Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676—before concluding that *quo warranto* was "the exclusive means of attacking *the validity* of an annexation agreement." (Emphasis added.) Accordingly, the court found that Fiala's counts I through IV were challenges to the annexation agreements and were barred by the one-year statute of limitations. The court dismissed counts I though IV, and dismissed the accounting called for in count V as moot. Fiala declined to file a post-judgment motion but timely filed a

notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19     Before this court, the parties largely reiterate their positions in the circuit court. We will

address each issue separately, starting with the circuit court's decision to grant the B&B

defendants' motion to dismiss pursuant to section 2-619(a)(9) of the Code.

¶ 20     A section 2-619(a)(9) motion admits the sufficiency of the complaint but asserts an

"affirmative matter" that defeats the claim. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. The purpose

of a section 2-619(a)(9) motion "is to dispose of issues of law and easily proved issues of fact at

the outset of litigation." *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 367 (2003). Our standard

of review is *de novo*. *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11.

¶ 21     The purpose of a *quo warranto* proceeding "is the same as in ancient times—to inquire by

what right or authority a certain office is held, an act performed or *** to test the legality of an act

or proceeding." *People ex rel. Freeport Fire Protection Dist. v. City of Freeport*, 90 Ill. App. 3d

112, 113 (1980). As is the case in many jurisdictions, "[t]he underlying reason for the writ [is] to

rein in government officials who exceed their constitutional or statutory authority ***." *Save Lake

Calhoun v. Strommen*, 943 N.W.2d 171, 176 (Minn., 2020).

¶ 22     As our prior comments have been used to drive the focus of this issue, we set them out in

full. At the end of *Fiala III*, we said the following:

         "Before we conclude, we note that defendants (aside from the District) have argued

    that, because plaintiff is attacking the validity of two annexation agreements (the 1994

    Agreement and the Norton Lakes Agreement), he can only obtain his requested relief

    through a *quo warranto* proceeding. See *People ex rel. Village of Northbrook v. City of*

*Highland Park*, 35 Ill. App. 3d 435, 439 (1976) ('It has been held repeatedly that the exclusive method of attacking the validity of an annexation is by *quo warranto* proceedings'). Plaintiff does not address this issue in his reply brief, but in his response to the combined motions to dismiss, he argued that there is no need for a *quo warranto* action, because "no legal challenge is being made against the 1994 Agreement," and he is merely seeking a finding that the Norton Lakes Agreement is void due to the conflicts of interest among the trustee[ ] defendants. See *In re Annexation to City of Prospect Heights*, 111 Ill. App. 3d 541, 543 (1982) (observing that a *quo warranto* action is not required when an annexation is void from its inception). However, plaintiff went on to argue that '[e]ven if the [Norton Lakes Agreement] survives, it makes no difference: It is the stolen money which [plaintiff] is ultimately seeking under the public trust doctrine.' Along those same lines, plaintiff maintained that his lawsuit was 'based primarily upon the premise that [the B&B defendants] stole over $12 million from the public coffers, by the use of fraud and deception, and in violation of the law.' These latter statements indicate that, notwithstanding his conflict of interest arguments, plaintiff is indeed attacking the validity of the annexation agreements.

The *quo warranto* issue is a microcosm of the difficulties that have plagued this case for the better part of the past decade. The defendants waited nearly seven years to raise it, and plaintiff responded with a puzzling legal argument. In his response to the combined motions to dismiss, plaintiff requested leave to amend his complaint to add a *quo warranto* action in the event that the *trial court* deemed it necessary. On remand, if *plaintiff* determines that a *quo warranto* action is necessary in light of this disposition, then the trial

court shall have discretion in determining whether to allow an amended pleading for that purpose." (Emphasis in original.) *Fiala III*, 2018 IL App (2d) 170556-U, ¶¶ 72-73.

¶ 23     The B&B defendants state that our "remand came with additional instructions" that "all of [Fiala's] claims *** were *required* to be brought pursuant to a *quo warranto* action" (emphasis added), which was now time barred under either the one-year statute of limitations for *quo warranto* actions under the Municipal Code (65 ILCS 5/7-1-46 (West 2018)) or the three-year statute of limitations under the Code of Civil Procedure (735 ILCS 5/18-104 (West 2018)). The circuit court likewise embraced that conclusion. In point of fact, however, we said nothing of the sort. What we *did* say was that to the extent Fiala wanted to add a *quo warranto* claim, he could *potentially* do so on remand with leave of court. That was all. We did not in any way state or imply that an action in *quo warranto* was Fiala's *exclusive* remedy.

¶ 24     As we noted in *Reserve at Woodstock v. City of Woodstock*, 2011 IL App (2d) 100676, "a *quo warranto* action must *** be based on a municipality's right or authority to act rather than on its discretionary acts[,]" which may be challenged by way of a declaratory judgment action. *Id*. ¶ 36; see also *People ex rel. Citizens for a Better Bloomingdale v. Village of Bloomingdale*, 37 Ill. App. 3d 583, 587 (1976) (stating that the "proper scope of [a] *quo warranto* proceeding is to challenge the authority to act, *as distinguished from the manner of exercising authority*" (emphasis added; citations omitted)). We continue to adhere to our prior holdings.

¶ 25     Here, Fiala is *not* challenging the validity of the District's annexation of any of the subdivisions in the Village. Rather, Fiala is challenging the District's exercise of discretion in assigning its right to receive payments for connections and fees to FMLP, which was then sold to B&B, under the public trust doctrine. Accordingly, Fiala seeks a declaration that the District's

funds and resources were improperly diverted and should be restored to the District. That analysis requires a court to interpret the annexation agreements and determine whether officials properly exercised their discretion pursuant to the agreements—not to invalidate the underlying ordinances. We said just as much in *Fiala I* when we held that Fiala had standing under the public trust doctrine to present such claims. See *Fiala I*, 2014 IL App (2d) 130253-U, ¶¶ 14-24. That entire discussion would have been pointless if in the very next breath we somehow held that *quo warranto* was Fiala's *exclusive* remedy. Accordingly, we reiterate that *quo warranto* was *not* the only action available to Fiala and that Fiala may continue to seek declaratory relief in this case. See, *e.g.*, *Reserve at Woodstock*, 2011 IL App (2d) 100676, ¶ 36.

¶ 26    Once again, we observe that "plaintiff's declaratory requests are deserving of more consideration." *Fiala III*, 2018 IL App (2d) 170556-U, ¶ 50. "Just because the District was authorized to bargain away its right to collect connection fees does not mean the District had *carte blanche* to form agreements in violation of the public trust doctrine, or to disregard potential conflicts of interest among the trustees." *Id*. We, therefore, reverse the dismissal of Fiala's complaint against the B&B defendants under section 2-619(a)(9) of the Code.

¶ 27    We reach a different conclusion, however, with respect to summary judgment in favor of Harrison. "An appeal following a grant of summary judgment, like an appeal from a section 2-619 dismissal, is subject to *de novo* review." *Seymour v. Collins*, 2015 IL 118432, ¶ 42 (citing *Raintree Homes, Inc. v. Village of Long Grove,* 209 Ill. 2d 248, 254 (2004)).

¶ 28    On the issue of summary judgment, Fiala did seek to invalidate the District's 2008 Norton Lakes Agreement with Harrison, and Fiala's constant refrain has been that the 2008 Agreement is "void." Along those lines, Fiala cites boilerplate that "a contract that is void *ab initio* is treated as

though it never existed" and that "neither party can chose to ratify the contract by simply waiving its right to assert the defect." *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 164 (2004). So, as in the circuit court, Fiala fervently maintains that the 2008 Agreement is void—or as he says, "It does not exist, and never existed. It is dead!" Fiala also asserts that the District could not re-affirm the 2008 Agreement in the 2014 settlement because "[y]ou cannot 'revise' or 'ratify' a nullity." Fiala submits, "There are no exceptions" to this rule "period!" We disagree.

¶ 29    As in the circuit court, Fiala cites no authority to support his radical proposition, which would effectively bar units of government from *ever* taking the same action after a contract or ordinance is deemed invalid. Fiala also cites no authority indicating that a legislator's statutorily barred conflict of interest is a distinct defect that cannot be cured, and that it ultimately bars the legislative body from ever taking up the issue again. Fiala's failure in this regard is unsurprising because the argument is a *non sequitur*. To be sure, where a contract is in violation of the State conflict of interest statute, it is void, and no part of *it* may be enforced. *Mersinger v. State*, 24 Ill.Ct.Cl. 312, 320 (1962). But as a matter of law, the invalidity of a legislative action speaks only to the invalidity of *that* enactment. It does not place the subject of the enactment beyond the purview of all further legislative action.

¶ 30    In short, Fiala misconstrues what it means to say that a legislative act is void. Contrary to Fiala's argument, "the void *ab initio* doctrine does not mean that a statute held unconstitutional 'never existed.' " *People v. Blair*, 2013 IL 114122, ¶ 29. Rather, it means that the statute is *unenforceable*. *Id. ¶* 30. Such " 'broad statements' " about what it means to say a law is invalid or void, " 'must be taken *with qualifications*.' " (Emphasis added.) *Perlstein v. Wolk*, 218 Ill. 2d 448,

461 (2006) (quoting *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374 (1940)). " 'The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.' " *Id.*

¶ 31    For example, when a statute is held unconstitutional because it was adopted in violation of the single subject rule, the legislature may revive the statute by reenacting the same provision, but in a manner that does not offend the single subject rule. *People v. Blair*, 2013 IL 114122, ¶ 31 (citing *People v. Ramsey*, 192 Ill. 2d 154, 157 (2000)). Fiala has failed to persuade us that statutory conflicts of interest require a different result. We note that even when our supreme court has declared a portion of a statute unconstitutional and struck down the remainder of the statute on non-severability grounds, the court has said that "the General Assembly is *free to reenact* whatever provisions it deems desirable or appropriate." (Emphasis added.) *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 471 (1997). We see no reason why the District was not similarly free to correct its legislative actions as well.

¶ 32    Fiala also seeks to undermine the District's 2014 ratification of the settlement agreement. Fiala asks us to take "judicial notice" of minutes from the District's board meeting and suggests that one of the trustees, Robert Skidmore, and his wife were business associates of Boose and Blood. Fiala now suggests that this is a question of material fact that prevents us from affirming summary judgment on this issue. We disagree with this proposition as well and determine that this argument has been procedurally defaulted. Fiala's claims regarding the trustee (and his wife) were never presented to the circuit court when it considered either Fiala's or Harrison's cross-motions for summary judgment. Accordingly, we decline to take judicial notice of an unverified claim that was not presented to the circuit court and which defendants have had no meaningful opportunity

to rebut. See *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507 (1997) (holding that a party waives a contention by failing to present evidence or seek judicial notice of a particular fact in the trial court).

¶ 33     Finally, we note that the record shows that Fiala, who was also suing the District in 2014, had complete notice of the terms and conditions of Harrison's 2014 settlement with the District over the Norton Lakes Agreement. Accordingly, we determine that Fiala is collaterally estopped in his efforts, in these proceedings, to challenge the 2014 ratification of the District's settlement and re-adoption of the Norton Lakes Agreement. See, *e.g.*, *LaSalle Bank National Association v. Village of Bull Valley,* 355 Ill. App. 3d 629, 635 (2005) (holding that annexation judgment could collaterally estop disconnection petition).

¶ 34                                   III. CONCLUSION

¶ 35     We note that this is now the *fourth* appeal we have considered following the dismissal of Fiala's complaint. In addition, it strikes us that, in all this time, the B&B defendants still have yet to file an answer to the complaint. To his credit, counsel for the B&B defendants conceded as much at oral argument—*i.e.*, that such a state of affairs was, at the very least, unusual in his professional experience. While we do not suggest that the B&B defendants should not avail themselves of all reasonable defenses, the time has long since passed for the orderly and efficient resolution of this litigation, whatever its outcome.

¶ 36     For the reasons stated, we affirm the judgment of the Circuit Court of Kane County granting summary judgment in favor of Harrison and reverse the judgment granting the B&B defendants' motion to dismiss. This cause is remanded to the circuit court for further proceedings consistent

with this order, and in conjunction with the entry of this disposition, we deny Fiala's motion to clarify following the oral argument as moot.

¶ 37    Affirmed in part and reversed in part; cause remanded.